HOLLAND BANKING COMPANY, Respondent, v. FRED W. SEE, Trustee, et al., Appellants.

Springfield Court of Appeals, June 6, 1910.

1. SUBROGATION: Debtor and Creditor: Mortgages: Collateral Security. A sold to B several "soldiers additional homestead claims." To protect B in case these claims should be worthless, A secured B by deed of trust on lands for the amount paid by B for the claims. B afterwards borrowed from a bank and put up these claims as collateral security. Before this debt was paid B died and the claims turned out to be worthless. B's administrator foreclosed the deed of trust. *Held*, in the suit by the bank against the administrator that the bank should be subrogated to the rights of the administrator of B to the fund

which was the proceeds of the sale of the security taken by B' to protect him against any loss by virtue of the claims proving worthless.

2. ————: **Principal and Surety: Bills and Notes.** Where the payee of a note takes collateral security for the payment of the same, a surety on the note is entitled to be subrogated to the rights of the payee to the security, and where the surety on the note has taken collateral security from the maker to indemnify him for signing the note, the payee of the note is entitled to the benefits of that security.

3. **EQUITY: Subrogation.** The right of subrogation is not founded on contract. It is a creation of equity; is enforced for the purpose of accomplishing the ends of substantial justice and is independent of any contractual relation between the parties.

4. **ADMINISTRATION: Allowance of Claim: Mortgage Debt: Subrogation: Statute of Limitations.** Where B had taken a deed of trust from A to secure B against the invalidity of certain "soldiers claims for additional homesteads" which A had sold to B and afterwards B put up these claims as collateral to secure a note executed to a bank for a loan, the bank was entitled to be subrogated to the rights of B in the deed of trust and in case of B's death where the claims turned out to be invalid, and the note is not paid, could have the deed of trust foreclosed and the proceeds, to the extent of the accepted value of the claims, applied on B's debt, and this without ever having presented its note for allowance against B's estate; and this right is not affected by the fact that two years had elapsed from the publication of notice of the taking out of letters of administration.

5. **MORTGAGES: Foreclosure Sale: Expenses of Sale.** Where property is sold under a deed of trust to pay a note or a debt the holder of the note or debt is entitled to be paid in full without having anything deducted for the expenses of the sale.

Appeal from Barton Circuit Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

*Mann, Johnson & Todd* and *Patterson & Patterson* for appellant.

(1) The court erred in rendering judgment against the defendant because under the petition and

the agreed statement of facts, which was all the evidence, no cause of action is alleged or stated in this, that it appears that there was no relation of contract or legal obligation between plaintiff and defendant. State ex rel. v. Loomis, 88 Mo. App. 507; State v. Railroad, 125 Mo. 615; Lewis v. Land Co., 124 Mo. App. 685; Insurance Co. v. Water Co., 42 Mo. App. 118; State ex rel. v. Winterbottom, 123 U. S. 215, 31 Law Ed. 124; Bank v. Ward, 100 U. S. 202, 25 Law Ed. 623; Hedges v. Dixon County, 150 U. S. 192; Bank v. Ward, 100 U. S. 195, 25 Law Ed. 621.

*Barbour & McDavid* for respondent.

(1) The statute limiting the time within which a debt due an estate must be filed, or section 185 referred to, does not affect a mortgage lien or any remedy thereon, nor does it release it nor pay the debt. This has been held to be the law of Missouri. Burris v. Cook, 215 Mo. 508; Conway v. Mueller, 176 Mo. 192. (2) Much has been written on the subject of subrogation and it has been likened to substitution and possesses some of the features of an equitable lien. In consideration of this subject the following authorities are cited. Harris on Subrogation, sec. 1; Sheldon on Subrogation, sec. 1; Pomeroy on Equity Jurisprudence, sec. 1211; Bispham's Equity, sec. 18; Furnold v. Bank, 44 Mo. 338; Capen v. Garrison, 193 Mo. 341; Clark v. Bank, 57 Mo. App. 286; Burnside v. Fetzner, 63 Mo. 111; Bank v. Leyser, 116 Mo. 78; Thornton v. Bank, 71 Mo. 232; Rachal v. Smith, 101 Fed. 164; In re Bruce, 158 Fed. 123; National Surety Co. v. Bank, 156 Fed. 26; Crippen v. Chappel, 35 Kan. 499, 11 Pac. 453, 57 Am. Rep. 187; Barnes v. Mott, 64 N. Y. 401, 21 Am. Rep. 625; Arnold v. Green, 116 N. Y. 571, 23 N. E. 1; Cobb v. Crittenden, 176 Fed. 513; Railroad v. Dow, 120 U. S. 287; Bank v. Bierstadt, 168 Ill. 618; Prindville v. Curran, 132 Ill. App. 172; Smith v. Surety Co., 59 N. Y. 791; Vassar

v. Liberty, 110 S. W. 121; Goldsmith v. Stewart, 45 Ark. 154; Chaffee v. Oliver, 39 Ark. 542; Cook v. Berry, 44 Atl. 77; Tarver v. Bank, 27 S. W. 40; McNeil v. Miller, 2 S. E. 335; Polluckie v. Wegenke, 119 N. W. 189; Emmert v. Thompson, 52 N. W. 31; Crippen v. Chappel, 11 Pac. 453; Arnold v. Green, 116 N. Y. 574; Barnes v. Motts, 64 N. Y. 401; Bank v. Paulsen, 78 N. W. 313.

GRAY, J.—On the 16th day of November, 1907, the plaintiff filed in the circuit court of Greene county, its petition against the defendants herein. At the May term, 1908, of said court, the defendants were granted a change of venue to the Barton County Circuit Court. The cause was tried in the Barton County Circuit Court, resulting in a judgment in favor of the plaintiff, and the cause is in this court on the appeal of the defendant, Fred W. See, trustee, from that judgment.

The conceded facts in the case are as follows: E. M. Robords departed this life in 1904, and the defendant, Fred W. See, duly qualified as his administrator, and was acting as such at the time this suit was commenced and tried. Robords prior to his death, was engaged in the business of handling Soldiers Additional Homestead Claims, and he purchased from the defendant, Allmon, claims of that character in the names of one Fitzgerald, Clark, Smith and Miller, paying for the claims of Smith and Miller nine hundred dollars; that after Allmon had transferred said claims to Robords, Allmon executed to the defendant, See, as trustee for Robords, a deed of trust on certain property in the city of Springfield. This deed of trust was executed because some question had come up concerning the validity of the homestead claims purchased by Robords from Allmon, and in order to secure Robords against loss. In addition to the deed of trust for twelve hundred dollars, the sum of five hundred dollars was deposited with Robords, and a warranty deed to a house and lot.

A written contract was entered into between Allmon and Robords, by which it was agreed should the said homestead claims be fraudulent or worthless, Robords was to retain from the said securities the amount required to compensate him for the amount originally paid for the claims, and after he had made himself whole, the surplus of the indemnity fund was to be returned to Allmon. It was further agreed that the securities should be appropriated for the purposes for which they were given, in the following order: The cash deposit of five hundred dollars, the house and lot for the sum of five hundred dollars, and last, the deed of trust should be foreclosed.

Robords borrowed from the respondent bank $15,500, for which he executed his several promissory notes, payable on demand. To secure the payment of the notes, he pledged and transferred to said bank, a number of homestead claims, including the claims of Smith and Miller above mentioned. Robords was unable to pay his notes, and the bank had disposed of, at a fair and reasonable valuation, all the security given by Robords to secure the payment of his notes, except the two homestead claims of Smith and Miller, and one additional claim. These three claims are absolutely worthless, and plaintiff tendered them into court at the trial of the case.

The contract between Allmon and Robords further provided for the return of the claims to Allmon when Robords had realized from his securities the amount paid for the claims.

In September, 1904, letters of administration were issued and notice thereof published in accordance with the law, and the plaintiff filed no claim against the estate of. Robords within two years from the date of the publication of the notice of letters of administration. Upon the death of Robords, the twelve hundred dollar note secured by the deed of trust was found

146 App.—18

among his assets, and came into the possession of the
administrator, and who, as trustee, afterwards adver-
tised the property for sale under the terms of the deed
of trust and the same was sold for $1150. The contest
is over this fund.

The plaintiff alleges in his petition the facts as
above stated, and claims that the funds in the hands of
the defendant, See, arose out of the sale of the property
given to secure the validity of the homestead claims held
by plaintiff, and that by reason of the assign-
ment of said claims to plaintiff by Robords for a valu-
able consideration, plaintiff became vested with the
rights of Robords in and to all moneys arising from the
foreclosure of property given to secure the payment of
such claims.

It is alleged in plaintiff's petition that giving due
credit for all payments made by Robords on his notes to
plaintiff, there is due plaintiff on said notes, the sum
of three thousand dollars, for which it holds no security,
except its claim against said funds in the hands of the
defendant, See. The petition asked that the funds in
the hands of See, to the amount of nine hundred dollars,
arising from the sale of the real estate, be paid to the
plaintiff.

The defendant, Allmon, filed an answer in the na-
ture of an affirmative pleading, and upon motion of
the appellant, he was required to give bond, and failing
to do so, his pleading was, on motion of appellant,
stricken out, and the cause was, by Allmon, abandoned.

The answer of the defendant, See, is a general de-
nial, and a plea of the Statute of Limitations, alleging
that the plaintiff presented no demand against the es-
tate of Robords within the two-year period fixed by the
statute.

We do not believe the two-year Statute of Limi-
tations prescribed for presenting demands against the
estates of deceased persons applies to cases of this char-
acter.

In Cowan v. Mueller, 176 Mo. 192, 75 S. W. 606, it is expressly held that the owner of a note made by decedent, can after the two-year Statute of Limitations, and without ever having presented such note for allowance, have the deed of trust executed by decedent as security for the payment of the note, foreclosed at any time within the period fixed by the general statute limiting the life of notes. The reasoning in that case is so applicable to the facts in the present case that we consider the same decisive of the point.

The main controversy is the right of respondent to be substituted or subrogated to the rights of the administrator of Robords to the security taken by Robords to protect him against any loss by virtue of the homestead claims proving to be worthless.

"Subrogation" is defined by Anderson in his Law Dictionary to be "The substitution of a new for an old creditor; more generally, the act of putting, by transfer, a person in the place of another."

The right is not founded on contract. It is a creation of equity; is enforced for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relation between the parties. [Memphis R. R. Co. v. Dow, 120 U. S. 301.]

"The doctrine of subrogation has become a part of the English and American law, has kept pace with the growth of the equitable principles until at the present time it exists in all its pristine vigor, and is extended to whomsoever as a matter of right and good conscience it should be applied. [54 Central Law Journal, 43; Harnsberger v. Yancy, 33 Gratt. 527; Greenwell v. Heritage, 71 Mo. 459.]

"It is treated as the child of equity, and is applied to secure a real and essential justice regardless of form, and independent of any privity of contract, or consideration between the parties affected by it. [Furnold v. Bank, 44 Mo. l. c. 338; Capen v. Garrison, 193 Mo. l. c.

341, 92 S. W. 368; Meyer v. Mintonye, 106 Ill. 414; Douglas v. Fogg, 8 Leigh 598.]

In Bank v. Paulsen, 78 N. W. 303, it is said: "The doctrine of subrogation is not a fixed and inflexible rule of law and equity. It does not owe its origin to statute or custom. It is a creature of the equity courts, invented and applied by them to do justice or prevent an injustice being done in a particular case, and under a particular state of facts where the law is powerless in the premises.

In Jones on Mortgages, section 874, it is said: "The doctrine of subrogation rests on the basis of mere equity or benevolence. It is resorted to for the purpose of doing justice between the parties."

In Greenwell v. Heritage, 71 Mo. 459, the administrator sold land subject to a mortgage, and afterwards paid the mortgage debt out of the general assets of the estate. And it was held he had a clear equity against the purchaser for reimbursement out of the land. In passing upon the case, the court used the following language: "The estate paid a debt for which the land was bound, and subject to which it was sold by the administrator, and whether we denominate the equity of the estate to reimbursement out of the land as a right of substitution, or subrogation, or there be no name, whatever, by which it can be otherwise characterized, it is a clear equity which will be recognized and enforced."

In Capen v. Garrison, supra, our Supreme Court said: "Subrogation is a doctrine of equity jurisprudence. It does not depend on privity or contract, express or implied, except in so far as the known equity may be supposed to be imported into the transaction. It is a consequence which equity jurisprudence attaches to certain conditions. The parties may not have contracted for it either expressly or by legal implication, but if, in the performance of that contract which they did make, certain conditions have resulted which make it necessary for equity to interpose its authority in this

respect it will do so, provided that in so doing it will violate no law and not alter the contract."

In Central Trust Company of New York v. New York Equipment Co., 34 N. Y. S. 349, it is held that a transferee of notes is subrogated to the rights of the transferer in collateral security.

It has been held in this State that where the payee of a note takes collateral security for the payment of the same, that a surety on the note is entitled to be subrogated to the rights of the payee to this security. And it has also been held that where the surety on a note has taken collateral security from the maker to indemnify him for signing the note, that the payee of the note is entitled to the benefit of that security. [Salmon Falls Bank v. Leyser, 116 Mo. 51, 22 S. W. 504.]

When we apply these recognized principles of equity to the facts in this case, it seems there can be but one conclusion. In this case Robords had purchased the homestead claims in controversy from Allmon. In order to protect Robords against loss by the claims proving worthless, Allmon gave him the security in controversy under an agreement that the security should be used to protect Robords against loss and upon the payment of sums sufficient to protect him, the homestead claims were to be returned to Allmon. Robords borrowed money of the plaintiff bank, and to secure it, assigned the homestead claims, and received full value therefor. If his estate is permitted at this time to sell the security and retain the proceeds, then it will be receiving money to which, in equity and good conscience, it is not entitled. The purpose in selling the real estate is to secure a fund to make good a loss caused by the homestead certificates proving worthless. They did not prove worthless to Robords, as he transferred them to the bank for a valuable consideration, and the bank is now the holder thereof.

If the transfer of a note carries with it the right to force payment by the transferee out of collateral se-

curity taken by the transferer, and if the transfer of a note carries with it a mortgage given for its payment, we cannot see why the bank in this case is not entitled to the security taken by Robords to secure the validity of the homestead certificates.

We have been cited to no authority holding that the rules above announced are not applicable to the facts in this case, and we do not believe any can be found.

The appellant insists that the respondent should be charged with its share of the expenses of the foreclosure amounting to $36, and this on the principle that he who seeks equity must do equity.

The principle announced is universally recognized, but does it apply to the facts in this case? Eleven hundred and fifty dollars in the hands of the defendant trustee, arose out of the sale under a mortgage given to protect the validity of the homestead claims, which are held by the bank as assignee of Robords. The interest of the bank in the security is for the full amount of the homestead claims, and where property is sold under a deed of trust to pay a note or a debt, the holder of the note and debt is entitled to be paid in full without having anything deducted for the expenses of the sale.

The equities of the case are with the plaintiff, and finding no substantial error in the record, the judgment will be affirmed. All concur.