FIRST NATIONAL BANK AND TRUST COMPANY OF KING CITY v. LOUIS N. BOWMAN ET AL., Appellants.—15 S. W. (2d) 842.

Division One, March 29, 1929.

*Fielding P. Stapleton* and *J. W. McKnight* for appellants.

656

*E. G. Robison* and *J. J. Robison* for respondent.

SEDDON, C.—Plaintiff commenced this action in the Circuit Court of Gentry County on August 7, 1925. The action is a statutory one, seeking to quiet, ascertain and determine the title to lots 15 and 16, in block 11, of Kate Carter's First Addition to the city of King City, Missouri. The petition is conventional, alleging that the plaintiff bank is the owner in fee simple of the above-described real property and that the defendants claim and assert some title, estate or interest therein, the nature and characer of which claim of interest is unknown to plaintiff, and praying the court to ascertain and determine the estate, title and interests of the respective parties in and to the described real property. The answer of the defendants, which is in the nature of a cross-bill, and the reply of plaintiff thereto, are lengthy, and no purpose is to be served in stating the substance of those pleadings. Suffice it to say that the answer of the defendants sets up the claim of interest of the defendants in the real property described, and avers that the Circuit Court of Gentry County was without jurisdiction of the subject-matter of a certain suit or action in partition, which suit or action will be presently mentioned and discussed in the course of our opinion, resulting in a judgment in partition, and an order of sale, whereby the described real property was sold to the plaintiff bank as the highest and best bidder at partition sale, and which sale was confirmed by the Circuit Court of Gentry County, it being averred in the answer of defendants that the Circuit Court of Gentry County was induced to exercise jurisdiction of said partition suit by the false and fraudulent representations of the plaintiff bank, and that the final judgment and subsequent proceedings therein, including the sale of the described real property to the plaintiff bank, were occasioned by fraud committed upon the Circuit Court of Gentry County by the plaintiff herein; wherefore,

the defendants pray that the judgment in said partition suit or action, and the deed in partition thereunder, be set aside and for naught held. The reply joined issue upon the averments of the answer, and pleads the judgment of the Circuit Court of Gentry County in the said partition suit as *res adjudicata* of all matters and things therein adjudged, and that the defendants are thereby estopped to dispute or controvert said judgment in the instant action.

The substantive facts are not controverted and may be briefly stated. The common source of title of the land in controversy was Maggie A. Bowman, the deceased mother of the principal defendant herein, Louis N. Bowman. Maggie A. Bowman died intestate in the month of September, 1917, owning and seized of the described land. She was survived by her husband, William L. Bowman, and by one child and descendant, the principal defendant herein, Louis N. Bowman, who was a minor of eighteen years at his mother's death. It is admitted by the parties herein that the estate of Maggie A. Bowman was duly administered by her surviving husband, William L. Bowman, as the administrator of her estate, in the Probate Court of Gentry County, in which county decedent resided at the time of her death.

On February 11, 1919, and during the minority of the principal defendant, Louis N. Bowman, the surviving widower of the decedent, William L. Bowman, executed and delivered to the First National Bank of King City (which, at that time, was the corporate name of the plaintiff bank) a deed of trust, purporting to convey to Robert Stanton, trustee for said bank, an undivided one-half interest in the land in controversy to secure the payment of William L. Bowman's promissory note of even date therewith for $1900, payable to the order of said First National Bank of King City on June 18, 1920, with interest on the principal sum from date at seven per cent per annum, payable annually. The deed of trust aforesaid contained the usual provisions, and empowered the trustee named therein to sell the described land, in the event of default in the payment of the principal and interest of said note when due and payable, at public vendue, for cash, to the highest bidder at the court house door in the city of Albany, Gentry County, Missouri, upon the giving of *thirty* days notice of the time, terms and place of sale, and of the property to be sold, by advertisement in some newspaper printed and published in Gentry County. Pursuant to the powers conferred by said deed of trust, the trustee named therein proceeded to sell the undivided one-half interest in and to the described lands, purported to have been conveyed by said deed of trust, on April 8, 1922, after the maturity of said note and default in the payment thereof, and the plaintiff bank being the highest and best bidder therefor at and

for the sum of $1825, the trustee executed and delivered to the plaintiff bank a trustee's deed, dated April 8, 1922, purporting to convey to the plaintiff bank an undivided one-half interest in and to the above-described land. It appears from the record herein, however, that the notice, or advertisement, of the trustee's sale was published for a period of only *twenty-nine* days, instead of *thirty* days, as required by the terms of the said deed of trust, which deficiency in the publication of the advertisement, however, seemingly was not discovered until shortly prior to the commencement of the present action, when the plaintiff bank sought to make a sale of the land in controversy and its title to said land was questioned by the prospective purchaser.

On July 6, 1920, the defendants herein, Louis N. Bowman (said Louis N. Bowman being then more than twenty-one years of age) and Elizabeth Bowman, his wife, executed and delivered a deed of trust, conveying to George Ward, trustee for Hiram Danbury, an undivided one-half interest in and to the land in controversy to secure the payment of their promissory note of even date for $2500, payable to the order of Hiram Danbury (who is the father-in-law of defendant, Louis N. Bowman) on or before one year after date, with interest at the rate of seven per cent per annum from the date of said note.

On April 4, 1921, William L. Bowman and his wife, Lydia C. Bowman (said William L. Bowman having remarried), conveyed, by warranty deed, an undivided one-half interest in and to the lands in controversy to George Ward and William Millan, the said deed re-citing that it is made subject to the deed of trust and the promissory note secured thereby, dated February 11, 1919, held by the said First National Bank of King City, which deed of trust, and the note secured thereby, the grantees, George Ward and William Millan, assume and agree to pay and discharge.

On August 9, 1923, the First National Bank & Trust Company of King City (plaintiff herein) commenced a suit or action for partition of the land in controversy, making Louis N. Bowman, Hiram Danbury and George Ward parties defendant therein. All of the said defendants in the partition action were duly served with summons therein. The petition in said partition action is cast in two counts. The first count of said petition is conventional in form, alleging that the plaintiff bank and the defendant Louis N. Bowman are tenants in common of the described land (being the same land now in controversy), and that the share or interest of the plaintiff bank therein is an undivided one-half thereof, and that the share or interest of the defendant Louis N. Bowman therein is an undivided one-half thereof, subject to the deed of trust, dated July 6, 1920,

executed and delivered by said Louis N. Bowman and his wife, to George Ward, trustee for Hiram Danbury; that partition of said land in kind cannot be made without great prejudice to the owners of said land; and praying that the land be ordered to be sold and that the proceeds of the sale of said land be partitioned and divided among the parties to the action in proportion to their respective interests therein. The second count of the petition averred that the defendant Louis N. Bowman had appropriated to his own use the rents and profits accruing from said land, alleged to be of the value of $720, and prayed that one-half of said sum, or $360, be adjudged to be a lien against the interest of said Louis N. Bowman in said land, and be paid to plaintiff bank out of the interest or share of said Louis N. Bowman in the proceeds arising from the sale of said land. The defendant Louis N. Bowman answered in said partition suit or action, as follows:

"Comes now the defendant, Louis N. Bowman, and for separate answer to plaintiff's petition, denies each and every allegation of fact and matter alleged and contained in said petition and in each and every count thereof.

"Further answering, this defendant admits that he is the owner of the undivided one-half interest of Lots 15 and 16, in Block Eleven, of Kate Carter's First Addition to King City, and that said interest is subject to the rights of Hiram Danbury, beneficiary in the deed of trust mentioned in plaintiff's petition.

"Further answering, this defendant denies that this defendant is indebted to the plaintiff for one-half of the reasonable rental value of said property for three years before the 8th day of August, 1923.

"Wherefore, this defendant, having fully answered, prays to be discharged and for his costs in this behalf expended."

The said answer is signed by Louis N Bowman, *pro se,* and is verified by him under oath according "to the best of his knowledge and belief."

It appears from the testimony of the defendant Louis N. Bowman in the instant suit, that said Louis N. Bowman, after having been served with process, together with a copy of the petition, in the partition suit, consulted a lawyer of his own selection, and that such lawyer prepared the answer so signed and filed by Louis N. Bowman (and above quoted) in the partition suit.

The partition suit came on for trial and hearing in the Circuit Court of Gentry County on September 14, 1923, and an interlocutory judgment therein was made and entered by said court, reciting that the defendants therein, Louis N. Bowman and Hiram Danbury, appeared in person and by attorney; that the cause was submitted to the court upon the pleadings and the evidence adduced, and that the

court finds that the allegations of plaintiff's petition are true; that the plaintiff, First National Bank & Trust Company of King City, is entitled to an undivided one-half of the described real estate, and that the defendant Louis N. Bowman is entitled to an undivided one-half of said described real estate, subject, however, to the lien of the deed of trust made by said defendant to George Ward, trustee for Hiram Danbury; and that partition of said land in kind cannot be made without great prejudice to the owners thereof; wherefore, it was ordered by the court that said land be sold according to law to the highest bidder for cash, and that the proceeds of said sale be partitioned and distributed between the parties according to their respective interests as so found and adjudged. Pursuant to the interlocutory judgment and order of sale so made and entered, the land was sold by the Sheriff of Gentry County on December 14, 1923, pursuant to advertisement duly made, to the plaintiff bank, it being the highest and best bidder therefor, for the sum of $3200; the sheriff duly made and filed his report of such sale in the Circuit Court of Gentry County on December 17. 1923, and during the term of the court at which the sale was made, whereupon the Circuit Court of Gentry County made and entered a final judgment, reciting that the sheriff's report of sale having remained on file in said cause for three days and no objections having been made thereto. the said sale and the sheriff's report thereof is therefore confirmed and approved by the court, and the sheriff was ordered to execute and deliver to the plaintiff bank, the purchaser at said sale, a deed to the land now in controversy. and, after paying all costs, to distribute the remainder of the proceeds of the said sale to the parties in the partition suit according to their respective adjudged interests. Thereafter. the Sheriff of Gentry County executed, acknowledged in open court. and delivered to the plaintiff bank a sheriff's deed in partition, conveying to the plaintiff bank the land now in controversy. None of the evidence adduced on the trial and hearing of the partition suit was offered in evidence on the trial of the instant action, nor does the evidence herein show that the record and judgment in the partition suit was reviewed upon appeal, or by writ of error, by any appellate court of this State.

It further appears from the record herein that William L. Bowman, by quitclaim deed dated February 12, 1925, conveyed to the plaintiff bank whatever right, title, interest or estate he then had in the land in controversy, and that, on September 14, 1925, and after the commencement of the present action, William Millan by quitclaim deed, conveyed to the defendant Louis N. Bowman whatever right. title or interest he then had in said land.

It furthermore appears from the record herein that one, George Ward, was the cashier of the plaintiff bank at the time of the death of Maggie A. Bowman, the mother of defendant Louis N. Bowman, and that said George Ward had continued to be the cashier of the plaintiff bank until the commencement and trial of the instant action. George Ward was a witness on behalf of the plaintiff bank on the trial of the instant cause, and testified, on cross-examination by defendants' counsel, as follows:

"Q. Mr. Ward, you have been connected with the First National Bank & Trust Company for a good many years, haven't you? A. Yes, sir. Q. You knew Mrs. Bowman, that is Maggie A. Bowman, the mother of this defendant, and the person from whom this title devolved, did you not? A. Yes, sir. Q. During her lifetime, she had transacted her business there at the First National Bank, had she not? A. Yes, sir, most of it, and I presume, all of it. Q. Mr. William L. Bowman transacted his business there with you A. Why, I think the major portion of it; I couldn't say he had done all of his business with us. Q. And you know the defendant Louis N. Bowman and have known him most of his life? A. Yes, sir. Q. Down to the time of this partition suit, with whom had he transacted his business? A. Largely with the First National Bank. Q. And when you say that the defendant, and Mr. William L. Bowman, and Mrs. Maggie A. Bowman had transacted their business largely with the First National Bank, that means that they had transacted their business largely with you? A. Yes, sir. Q. You were in the active charge and control of that bank? A. Yes, sir. . . . Q. You had handled a great many matters in the probate court? A. Yes, sir. Q. And you are generally familiar with the probate laws of this State? A. Reasonably so. Q. Now, at that time, you took for the bank a mortgage on the William L. Bowman interest; did you draw that mortgage? A. I think I did. Q. It was your custom there in the bank usually to draw the mortgages for the bank? A. Yes, sir. . . . Q. State to the court how you made that mortgage on an undivided half interest in that piece of property? A. For the reason that Mr. Bowman had always said to me that he had filed his declaration taking a child's part in the estate, which would give him a half interest in the property. Q. Now, you have just stated that you know generally about the probate laws of this State, didn't you? A. Yes, sir. Q. Isn't it a fact, Mr. Ward, that you knew at that time that no one ever heard of a husband taking a child's part in his wife's real estate? Had you ever heard about that, heard of it being possible for a husband to take a child's part in his wife's real estate? A. I never heard that question raised. Q. You never heard that question raised, but don't you know yourself that the only right a husband had in his wife's real estate, without a will, was the right to

curtesy, being a life estate? A. I don't know that. Q. You don't know anything about that at all? A. No, sir. Q. In other words, you don't know that part of the probate law of this State? A. No, sir. Q. You had heard of curtesy? A. Yes, sir. Q. Did you have any knowledge, at that time, of what curtesy meant? A. Well, curtesy, as I understand it, is practically the same as dower for the wife. Q. Yes, sir, and you were familiar, weren't you, at that time, that the husband had the right to curtesy in the wife's estate where there was a child born in wedlock? A. Yes, sir, he had, the right to curtesy if he didn't make a declaration taking a child's part. Q. Well, I say, did you ever hear of a husband taking an election as a child until long after the statute of 1921 was passed? Isn't it a fact, Mr. Ward, that your knowledge in regard to these elections that the husband may make has been acquired since this transaction has occurred? A. No, sir. Q. Later, a mortgage was made from the defendant Louis N. Bowman in 1920, to George Ward, trustee for Hiram Danbury; you drew that mortgage? A. I think I did. Q. How did you happen to put a one-half interest in that mortgage? A. For the reason that my understanding was that is what Louis had, a half interest, and that his father had taken a child's part and had the other half. . . . Q. So you just put a half interest in this deed? A. Yes, sir. Q. From what you have said there, Mr. Ward, you are the man that is responsible for this deed showing an undivided one-half interest, are you not? A. I presume that I am. Q. For the reason that you assumed that the defendant Louis N. Bowman only had a half interest in that property? A. Yes, sir. Q. Now, you have learned since, have you not, that the only interest William L. Bowman had in this property was a life estate? A. No, sir. I don't know it yet. . . . Q. Do you know now, Mr. Ward, what interest Mr. Bowman really had in this land at the time he gave you that mortgage, that is, William L. Bowman? A. In this suit it is alleged that he is the owner of a curtesy interest in it, or a dower interest in it. Q. When did you first learn that? A. Through the answer to this suit. . . . Q. Now, when this piece of property was foreclosed, it was the First National Bank that bought the William L. Bowman interest, wasn't it? A. Well, the dates, I couldn't answer; the First National Bank and the First National Bank & Trust Company are one and the same. Q. But, anyway, the bank bought it? A. Yes, sir. Q. And it was only a short time after they bought it until they brought a partition suit, was it not? A. Yes, sir. . . . Q. You were the man that instigated the bringing of that suit, as cashier? A. That suit was ordered by the board of directors of the bank. Q. Well, what I mean, you were the man that saw the attorney about bringing the suit and taking the matter

up? A. No, sir. I think the board of directors instructed him, and he drew the petition. Q. Had you told him what interest you (the bank) had in the land? A. I think I did. Q. And you told him what interest this defendant Louis N. Bowman had in that land? A. As I understood it. Q. And you told him that Louis N. Bowman had the same interest in that land, in that suit, that you had put in this deed of trust back here that Louis Bowman gave to Hiram Danbury to secure the note? A. I so understood all the time that he had a half interest in it. Q. And so informed this defendant? You had told this defendant that was the interest he had? A. I think I did. Q. And back when the deed was drawn, the deed of trust to Danbury, you informed him then that he had a one-half interest in this property? A. I have answered that several times. Q. Well, I am saying back at the time you drew the deed of trust to Danbury? A. Well, I have always said to Louis—or to William L. Bowman, the father, and my understanding was with Louis—that his father had filed an election taking a child's part, which gave him half the property, and I have always so talked that. Q. Haven't you always so told Louis that all he had in this property was a half interest? A. I have answered that repeatedly, that my understanding was that he had a half interest in it. Q. Well, that doesn't answer it; I am asking you if you haven't always told Louis, the defendant, that he only had a half interest in the property? A. Well, I couldn't say whether I did or not. I still maintain my position that I have always said my understanding was that the father took a child's part and was entitled to half of it. . . . Q. I say, do you recall ever talking to this defendant, Louis N. Bowman, about his interest, or was it the father you talked to? A. Well, I think I talked to both; the father in the first place, and then afterwards, I think, I explained to Louis that his father had declared his election and taken a child's part. Q. And you told this defendant, Louis N. Bowman, that it had been filed in the probate office here? A. I so understood from the father. Q. And that is what you told him? A. Yes, sir. . . . Q. You think now you drew up an election for him to take a child's part? A. I do; yes, sir. Q. Well, isn't it a fact, Mr. Ward, that you never heard of a husband being entitled to an election until here in the last three or four years, since the 1921 Act? A. I don't know about that; I never heard it questioned. Q. Well, did you ever know of a case in which you filed an election for a husband, or drew an election to take a child's part? A. I don't recall, just on the spur of the moment, of having prepared any other. Q. From this cross-examination, anyone reading the record might get the wrong idea. Are you a licensed attorney to practice law? A. No, sir. Q. And don't pretend to be? A. No, sir. Q. Did you assist Mr. William

L. Bowman in the administering of this (Maggie A. Bowman) estate? A. I think I did.''

The defendant, Louis N. Bowman, testified on his own behalf, on direct examination: ''Q. You gave a mortgage to George Ward, as trustee for Hiram Danbury, dated July 6, 1920, you remember you did give this mortgage? A. Oh, yes, I know I gave the mortgage. Q. When you went to give that mortgage, the mortgage states that you only had an undivided one-half interest in this property in suit. Do you know how that happened to be put in there? A. Only as I remember the mortgage was drawn there by Judge Sullinger or Mr. Ward—I don't know which it was—they are both the legal and financial advisers of the community, and we naturally went to either one of them. Q. Was Judge Sullinger the financial adviser? A. No, I said he was the legal adviser; but what I was trying to get at, either it was Mr. Ward, or the Judge, who drew the paper and fixed it up. Q. Now, this mortgage showed an undivided one-half interest. Where did you ever get the idea you only had an undivided one-half interest in this property? A. Well, I don't know that I can answer that directly. That was all I was generally conceded to have in it, and in all my dealings at the bank, I don't think that it was—that I ever asked anybody point blank how that was— I don't know—it was written in the mortgage that way, and I took it for granted that the probate court had left me that much of it. Q. Did you ever ask Mr. Ward what interest you had, or anything? A. I don't know that I ever did. . . . Q. From whom did you get the impression that you only had a half interest in this property? A. Well, I don't know that I can answer it. That is rather a hard question to answer, because that impression, I don't know where it dates from. Mr. Ward never told me in so many words that, but my business was done there, and I suppose my impression was gained there in business with the bank, but that is rather a hard thing to state, because I don't know where my impression began. Q. You never consulted with anyone else about what interest you had other than Mr. Ward, did you? A. No, sir.'' Cross-examination: ''I am a high school graduate, and had some university work at the University of Missouri in the School of Journalism, two years' work in the School of Journalism. . . . Q. And, of course, you remember the sheriff served a summons on you in the partition suit of this property? A. Yes, sir. Q. And Mr. Danbury is what relation of yours? A. Father-in-law. Q. You and Mr. Danbury came up to Albany to consult some lawyer about what kind of answers were to be filed in it? A. Yes, sir. . . . Q. He was a practicing lawyer here in Albany at that time? A. Yes, sir. Q. And had been, down at King City, where you ran your newspaper? A. Yes, sir. Q. Acquainted with you and your father, was he not? A. Yes, sir. Q.

And also acquainted with the fact, of course, that your mother was dead, when you were bringing this partition suit? A. Yes, sir. Q. In other words, he was well acquainted with your father and mother, and knew the members of your family? A. Yes, sir. Q. And also you, or Mr Danbury, had a copy of the petition that the sheriff had served on you? A. I presume. Q. And showed that to your lawyer? A. Well, I couldn't say, but I suppose so. Q. Then, after talking the matter over, he filed your answer for you, or prepared your answer, and you signed it, and he did the same for Mr. Danbury, that is correct, is it? A. Yes, sir. Q. You were over here when the case was heard and the questions were up about the rents and dividing the property? A. Yes, sir. Q. And knew about the order of sale, that it was to be sold? A. Yes, sir. Q. Did you attend the sale? A. No, sir. . . . I had no question at that time in my mind but that I owned only a one-half, an undivided one-half interest.''

The trial court thereupon entered a judgment, wherein it ''is ordered, adjudged and decreed by the court that the right, title, estate and interest of the parties to this action in and to said lands be and the same is hereby adjudged to be, as follows: Plaintiff is the owner of said lands in fee simple, except an undivided one-fourth interest in said lands of the life estate of William L. Bowman, which said interest is subject to the lien of $1900 as aforesaid, that is, the sum of $1825, with interest at rate of six per cent per annum since April 8, 1922, which said interest belongs to defendant Louis N. Bowman, and that the other defendants have no right, title, estate or interest in and to said lands, and the costs are taxed against defendants Louis N. Bowman and Bessie Bowman.'' After unsuccessful motions for a new trial and in arrest of judgment, the defendants were allowed an appeal to this court from the judgment so entered.

Error is assigned by the appellants upon the several grounds that the trial court erred in finding and holding that the Circuit Court of Gentry County had jurisdiction of the partition suit hereinabove mentioned, and in finding and holding that the parties thereto had the right to partition of the land in controversy, for the reason that the plaintiff bank and the defendant Louis N. Bowman, the respective parties plaintiff and defendant in said partition suit, were not joint tenants, tenants in common, or coparceners, of the land in controversy, and therefore statutory partition is not maintainable as between said parties; that the trial court erred in finding and holding that the judgment in said partition suit is *res adjudicata* as respects all matters therein adjudged, and therefore is conclusive as between the parties to the partition suit, and in finding and holding that the defendant Louis N. Bowman is estopped to question or controvert the

said partition judgment in the instant collateral suit or action; that the trial court erred in finding and holding that no fraud was committed by the plaintiff bank upon the Circuit Court of Gentry County, or upon the defendant Louis N. Bowman, in the procurement of the judgment and order of sale in the partition suit, and in the sale of the land in controversy thereunder; and that the trial court erred in finding and holding that the adjudged interest of defendant Louis N. Bowman in the land in controversy is subject to the equitable lien of the plaintiff bank in the sum of $1825, which amount was paid by the plaintiff bank as the purchaser of the interest of William L. Bowman in the land under the defective foreclosure of the deed of trust executed and delivered by said William L. Bowman to Robert Stanton, trustee, on February 14, 1919, and which sum of $1825, so paid by plaintiff bank as the purchaser at the defective foreclosure sale, was applied to the payment and extinguishment of the debt of said William L. Bowman.

I.  At the time of, and upon, the death of Maggie A. Bowman, the common source of title, which occurred in September, 1917, her surviving husband, William L. Bowman, under the then existing law of this State, became vested of curtesy consummate, which is a freehold estate for life, in the land in controversy, for, at that time, tenancy by the curtesy had not been abolished by statute in this State, but still remained, as introduced in this State as a part of the common law, as being the common-law right (sometimes inaccurately called the marital right) of the surviving husband in the realty of his deceased wife, except in the instance that the wife shall die without any child or other descendants in being capable of inheriting, in which instance the surviving widower was, by virtue of Section 350, Revised Statutes 1909 (Sec. 320, R. S. 1919), entitled to one-half of the realty belonging to the wife at the time of her death, absolutely, subject to the payment of the wife's debts.  Tenancy by the curtesy was not abolished in this State until the enactment, by the General Assembly, of an act, approved on March 29, 1921, and which became effective and operative on June 20, 1921, which, by its terms, abolished curtesy, and in lieu thereof gave to the surviving widower the same share in the real estate of his deceased wife that is provided by law for the widow in the real estate of her deceased husband, subject to the same rights of election and the same limitations.  [Laws 1921, p. 119.]  It is clear, therefore, that William L. Bowman, the widower of Maggie A. Bowman, and the father of the defendant, Louis N. Bowman, was seized of a life estate only in the land in controversy upon the death of his wife, and that the defendant Louis N.

Bowman was seized, by inheritance, of an estate in fee simple in the whole of said land, subject to the life estate, or curtesy, of his father therein. It follows, then, that the deed of trust, executed and delivered, on February 11, 1919, by the surviving widower, William L. Bowman, and purporting to convey an undivided one-half interest in said land to Robert Stanton, trustee for the First National Bank of King City, was ineffectual to convey to said trustee any part of the fee in the land in controversy, and that the trustee's deed made and delivered to the plaintiff bank, in pursuance of the powers conferred by said deed of trust, was likewise ineffectual to convey to the plaintiff bank any part of the fee in said land, even though the notice or advertisement of the trustee's sale had been given for the number of days prescribed and required by the deed of trust, which was not done.

Apparently believing, and proceeding under the impression, that the deed of trust aforementioned had conveyed to the trustee therein named an undivided one-half interest, in fee simple, in the said land, and that the plaintiff bank, as the purchaser at the trustee's sale thereunder, had acquired and become vested with an undivided one-half interest, in fee simple, in said land by virtue of the trustee's deed (although such inference is not conclusive upon the record herein), the plaintiff bank brought a suit for partition of said land in the Circuit Court of Gentry County, making Louis N. Bowman a party defendant to such partition suit. The evidence herein discloses that summons, together with a copy of the petition in said partition suit, were duly and regularly served upon, and delivered to, the defendant therein, Louis N. Bowman (who is also the principal defendant in the instant cause), who consulted and employed a lawyer of his own selection in the matter of the partition suit. The evidence herein further discloses that said lawyer, at the instance and request of the defendant Louis N. Bowman, drafted an answer to the petition filed by the plaintiff bank in the partition suit, which answer contains the specific admission of the defendant Louis N. Bowman, that "he is the owner of the undivided one-half interest of Lots 15 and 16, in block eleven, of Kate Carter's First Addition to King City" (being the land now in controversy), and which answer was signed by Louis N. Bowman, *pro se,* was verified under oath according to his best knowledge and belief, and was duly filed by him as his pleading in the partition suit. Upon such pleading of defendant Louis N. Bowman, the partition suit proceeded to trial, resulting in an interlocutory judgment, reciting that the defendant therein, Louis N. Bowman, appeared in person and by attorney, and that the partition cause was submitted to the Circuit Court of Gentry County upon the pleadings and the evidence adduced, and a

finding by said court that the allegations of plaintiff's petition therein are true, and that the plaintiff bank is entitled to an undivided one-half of the described real estate and that the defendant Louis N. Bowman is entitled to an undivided one-half of said real estate, and that partition of said real estate in kind cannot be made without great prejudice to the owners thereof, and, therefore, that the described land be sold according to law for cash to the highest bidder, and that the proceeds of such sale be partitioned and distributed between the said parties according to their respective interests as so found and adjudged by the court. The record herein further discloses that said land was sold, pursuant to the said interlocutory judgment and order of sale, to the plaintiff bank, which was the highest bidder therefor at and for the sum of $3200, which was paid by the plaintiff bank in cash; that due report of said sale was made to the court by the sheriff; that the sheriff's report of sale remained on file in said partition suit for three days, and that no objections or exceptions were made thereto by any of the parties to the partition suit; wherefore, the Circuit Court of Gentry County entered a final judgment in said partition suit, confirming the sale and the sheriff's report thereof, and ordering the sheriff to execute and deliver to the plaintiff bank a deed, conveying to plaintiff bank the whole of the land now in controversy, which was accordingly done by the sheriff, pursuant to said final judgment. So far as the present record shows, no appeal was taken, or writ of error sued out, by the defendant Louis N. Bowman, to review the judgments, interlocutory or final, made and entered by the Circuit Court of Gentry County in the partition suit. Nor does the record in the present cause contain or disclose the evidence adduced upon the trial of the partition suit, upon which evidence the Circuit Court of Gentry County predicated its judgments, interlocutory and final, in the partition suit.

It is argued by the appellants that the Circuit Court of Gentry County was without jurisdiction in the partition suit, for the reason that the plaintiff bank was not seized of any interest in fee in the land in controversy, but was seized of a life estate only in said land, and therefore the plaintiff bank, at the time of the commencement of the partition suit, was not a joint tenant, tenant in common, or coparcener with the defendant therein, Louis N. Bowman, who held title to the whole of said land in fee simple, subject to the curtesy, or life estate, therein of his father, by inheritance from his deceased mother, Maggie A. Bowman, and hence statutory partition could not be maintained between the parties under the decisions of this court in Atkinson v. Brady, 114 Mo. 200, and Stockwell v. Stockwell, 262 Mo. 671, and others cases, wherein it is ruled that a life tenant (only, and as such) cannot maintain statutory partition against a remain-

derman who takes the fee upon the death of the life tenant. The argument and contention of the appellant just stated, however, is obviously predicated upon the evidence in the instant cause, rather than upon the evidence adduced in the partition suit.

It cannot be gainsaid that the Circuit Court of Gentry County had jurisdiction of the subject-matter of the partition suit. Jurisdiction of the subject-matter is defined as "the power to hear and determine cases of the general class to which the proceedings in question belong; the power to deal with the general subject involved in the action. . . . Such jurisdiction the court acquires by the act of its creation, and possesses inherently by its constitution; and it is not dependent upon the sufficiency of the bill or complaint, the validity of the demand set forth in the complaint, or plaintiff's right to the relief demanded, the regularity of the proceedings, or the correctness of the decision rendered." [15 C. J. 734. 735.] Section 22, Article VI, of our State Constitution, invests the circuit court with "exclusive original jurisdiction in all civil cases not otherwise provided for." Section 2436, Revised Statutes 1919, provides: "The circuit courts in the respective counties in which they may be held shall have power and jurisdiction as follows: . . . Second—Exclusive original jurisdiction in all civil cases which shall not be cognizable before the county courts, probate courts and justices of the peace, and not otherwise provided for by law." Section 1996, Revised Statutes 1919, provides that the petition in a partition suit "shall be filed in the circuit court of the county in which such lands, tenements or hereditaments lie." The land in controversy lies wholly within Gentry County. Thus it appears, without possibility of question or doubt, that the Circuit Court of Gentry County had jurisdiction of the subject-matter of the partition suit, and of the *res*, or land, sought to be partitioned. Such court also had jurisdiction over the person of the defendant therein. Louis N. Bowman, who was a resident of Gentry County and who was personally served in Gentry County with a copy of the summons, together with a copy of the petition, in the partition suit.

As we have said, the evidence adduced in the partition suit, and upon which evidence the judgments of the Circuit Court of Gentry County, interlocutory and final, rendered in the partition suit. were predicated, is not incorporated. or set forth, in the record in the instant cause. The petition in the partition suit avers that the plaintiff bank and the defendant Louis N. Bowman are tenants in common of the land in controversy, and that each of said parties is entitled to an undivided one-half thereof. The Circuit Court of Gentry County, by its interlocutory judgment in the partition suit, found that "the allegations of plaintiff's petition herein are true," and

that, as alleged in plaintiff's petition, the plaintiff bank and the defendant Louis N. Bowman are each entitled to an undivided one-half of the land in controversy. It well may have been that the evidence adduced in the partition suit amply supported and warranted the findings, conclusions and judgment reached by the Circuit Court of Gentry County therein. It is not for this court to speculate or conjecture, in this different and collateral cause, upon what evidence, or upon what muniments or instruments of title, the Circuit Court of Gentry County predicated its findings and judgment in the partition suit. Nor can we say that the findings and judgment of the court in the partition suit were predicated wholly and only upon the recorded instruments or muniments of title which are in evidence in the instant cause. The object and purpose of the recording statutes of our State is to impart notice of the title to lands to prospective and subsequent purchasers and mortgagees of such lands, and the record of recorded instruments or muniments of title is admissible in evidence as showing title only by virtue of statute (Sec. 2208, R. S. 1919), and then only upon the oath or affidavit of the party wishing to use the same, or of any one knowing the fact, that such (original) instrument is lost, or not within the power of the party wishing to use the same. Title to land may be, and ordinarily is, established and proved by the original instruments or muniments of title themselves, and not by the record of such instruments; this, for the reason that the original muniments constitute the best evidence of title. [22 C. J. 993.] There is nothing in the record before us tending to show what evidence, and what instruments or muniments of title, were before the Circuit Court of Gentry County in the partition suit. It well may have been that original and unrecorded muniments of title, or other matters of evidence, were before that court in the partition cause which justified that court in reaching the findings, and the judgment, made and entered by the court in that cause. "It is well established as a general rule that, where a court of general jurisdiction has exercised its powers, it will be presumed, unless the contrary appears of record, that it had jurisdiction both of the subject-matter of the action and of the parties, for, as the first duty of all courts is to keep strictly within the limits of their jurisdiction, any affirmative act on the part of a court implies that it has ascertained that it has jurisdiction so to act. Conversely, no presumption against jurisdiction can be indulged, nor should anything be presumed to be outside of the jurisdiction of a court of general jurisdiction. It accordingly will be presumed that all the facts necessary to give the court jurisdiction to render the particular judgment were duly found, and that every step necessary to give jurisdiction has been taken." [15 C. J, 827-829.] And, according to the weight of authority, the

presumption in favor of the jurisdiction of a court of record may be overcome only by recitals in the record showing affirmatively that the court was without jurisdiction in respect either to the parties or to the subject-matter, and not by evidence *dehors* the record in the suit or action in which the court has assumed jurisdiction. [15 C. J. 832.] Furthermore, where the evidence upon which a trial court predicated its findings and judgment is not before the reviewing court, it must be presumed that the evidence is sufficient to support and sustain the findings and judgment of the trial court. [4 C. J. 777, 786.]

II. Inasmuch, therefore, as the Circuit Court of Gentry County had jurisdiction of the subject-matter, and of the parties, in the partition suit, it follows that the judgments, interlocutory and final, made and entered therein are *res adjudicata* as respects all matters therein adjudged, including the interests and titles of the respective parties in and to the lands now in controversy, and are conclusive and binding upon the parties to the partition suit (in the absence, as here, of any evidence of a reversal of such judgments upon appeal or writ of error), unless there be substantial evidence in the instant collateral cause of actual fraud in the procurement of such judgments. In 34 Corpus Juris, 511, the general rule is thus stated: ''A judgment rendered by a court having jurisdiction of the parties and the subject-matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect to its validity, verity, or binding effect, by parties or privies, in any collateral action or proceeding, except for fraud in its procurement. Even if the judgment is voidable, that is, so irregular or defective that it would be set aside or annulled on a proper direct application for that purpose, it is well settled as a general rule that it is not subject to collateral impeachment so long as it stands unreversed and in force.''

It is furthermore said, in 34 Corpus Juris, 953: ''In most jurisdictions partition has ceased to be regarded as a mere possessory action, and the judgment is generally held to be conclusive upon every right or title put in issue and decided, or which properly might have been litigated and determined. It therefore establishes the title of the parties to the land partitioned, and is conclusive as to any adverse claim of title or of possession on their part existing at the time of its rendition.'' Such has been the uniform holding of this court. [Bobb v. Graham, 89 Mo. 200, 207; Holladay v. Langford, 87 Mo. 577, 582; Forder v. Davis, 38 Mo. 107, 118; Yore v. Yore, 240 Mo. 451, 464; Landis v. Overton (Mo. Sup.), 293 S. W. 371, 372, and cases there cited.]

There is a suggestion in the brief of the appellants herein that William L. Bowman, the father of defendant, Louis N. Bowman, and his grantees, George Ward and William Millan, should have been made parties to the partition suit, and, therefore, that there was a defect of parties in that suit. However, such claim is unavailing to the defendant Louis N. Bowman, who was a party defendant to the partition suit, for the reason that it has been definitely ruled by this court that a judgment in partition cannot be avoided by one of the parties to the partition suit upon the ground that others, who were not parties, had an interest in the premises partitioned. Such a judgment concludes all persons who were brought within the jurisdiction of the court. [Cochran v. Thomas, 131 Mo. 258, 279; Landis v. Overton (Mo. Sup.), 293 S. W. 371, 372.]

III. It is contended, however, by the appellants that fraud was committed by the plaintiff bank upon the Circuit Court of Gentry County, and upon the defendant Louis N. Bowman, in the procurement of the judgments, interlocutory and final, in the partition suit. It is argued by appellants that a confidential and fiduciary relation existed between George Ward, the cashier of the plaintiff bank, and the defendant Louis N. Bowman and his father and mother; that Ward was the chief executive officer of the bank and was the confidential adviser of the Bowman family; that Ward, having assayed and assumed to advise William L. Bowman, the widower of Maggie A. Bowman, and Louis N. Bowman, the son of Maggie A. Bowman, as to their respective interests and titles in the land in controversy, was bound to know the nature and extent of their respective titles and interests in such land under the existing law of this State; that, relying on the advise of Ward as their confidential adviser, William L. Bowman and Louis N. Bowman were led to believe that each had an undivided one-half interest, in fee simple, in the land; that the plaintiff bank is chargeable with the knowledge of Ward, its cashier and chief executive officer, as to the respective titles and interests of William L. Bowman and Louis N. Bowman in the land, under the existing law of the State at the time of the death of Maggie A. Bowman; that the allegations of the petition filed by the plaintiff bank in the partition suit were false and untrue, and misstated the real and actual titles and interests of the parties therein; that the defendant Louis N. Bowman, acting and relying upon the advice of Ward, the cashier of plaintiff bank, was lulled into the belief that he had only an undivided one-half interest in fee in the land in controversy, and was therefore fraudulently cheated and deprived of his defense and legal rights in the partition suit; and that the Circuit Court of Gentry

County was misled and deceived by the fraud of the plaintiff bank in misstating and misrepresenting the titles and interests of the respective parties in the land, and was thereby caused to render a judgment in the partition suit erroneously defining and declaring the titles and interests of the respective parties.

However, we find from the record herein no substantial evidence of any fraud on the part of the plaintiff bank, or of its cashier, George Ward, in the procurement of the judgment in the partition suit, committed either upon the court or upon the defendant therein. Louis N. Bowman. There is no evidence herein that the plaintiff bank practiced any fraud or deception upon the court in the procurement of the partition judgment. The defendant therein, Louis N. Bowman, was *sui juris*; he consulted and employed a lawyer of his own selection in the matter of the partition suit, and the lawyer prepared an answer therein at the request and on behalf of Louis N. Bowman, who signed the answer *pro se*, verified and filed the same as his pleading in the partition suit; and the interlocutory judgment in the partition suit recites that the defendant Louis N. Bowman appeared on the trial thereof in person and by attorney. According to his own testimony in the instant cause, it is reasonably clear that the conduct and acts of Louis N. Bowman in the premises were not induced or controlled by any act or representation of the plaintiff bank, or of its cashier, George Ward. When asked where he got the impression that he had only an undivided one-half interest in the property, Louis N. Bowman replied: "That was all I was generally conceded to have in it, and in all my dealings at the bank, I don't think that it was—that I ever asked anybody point blank how that was—I don't know—I took it for granted that the probate court had left me that much of it. Q. Did you ever ask Mr. Ward what interest you had, or anything? A. I don't know that I ever did. . . . Mr. Ward never told me in so many words that, but my business was done there, and I suppose my impression was gained there in business with the bank, but that is rather a hard thing to state, because I don't know where my impression began."

Viewing the evidence herein in the light most favorable to the appellants, we cannot say that the evidence justifies the vacation and annulment of the judgment in the partition suit. The general rule is thus stated in 34 Corpus Juris, 283: "Mere failure to disclose to the adversary, or to the court, matters which would defeat one's own claim or defense is not such extrinsic fraud as will justify or require vacation of the judgment. Actual fraud as distinguished from constructive fraud is essential." Our own court has said, in speaking to the same question, in Murphy v. DeFrance, 101 Mo. 151, 157: "A judgment procured by fraud may, of course, be set aside in

equity, but the fraud because of which such relief is granted is one in procuring the judgment. As has been said by this court: 'Courts of equity will not vacate or enjoin a judgment merely based upon a cause of action which may be vitiated by fraud, for this is a valid and meritorious defense, which may be interposed, and unless its interposition is prevented by fraud of an adversary, . . . it cannot be asserted against a judgment, either foreign or domestic.' [Payne v. O'Shea, 84 Mo. 130.] 'The fraud,' says Freeman, 'for which a judgment may be vacated or enjoined in equity must be in the procurement of the judgment. If the cause of action be vitiated by fraud, this is a defense which must be interposed, and unless its interposition be prevented by fraud, it cannot be asserted against the judgment.' [Freeman on Judg. (3 Ed.) sec. 489.] Courts of equity do not grant such relief for the purpose of giving a defeated party a second opportunity to be heard on the merits of his defense; and the relief is confined to those cases where the judgment is procured by fraud or through excusable mistake or unavoidable accident. [Freeman, Judg., sec. 486.] Applying the foregoing principles of law to this case, there is not a shadow of a ground for setting aside the judgment in the case of DeFrance against Nancy Murphy. The great bulk of the evidence does not touch the question whether that judgment was procured by fraud, but goes to the merits of that controversy. That suit was commenced in 1876 and was pending until 1880, so that the defendant therein had abundant time and opportunity to prepare for trial. . . . This suit was not commenced until five years after that one had been determined, and it is perfectly apparent that this is but an effort to review that judgment on the merits. This a court of equity has no right to do. That case may have been decided for the wrong party, and there is ground for the claim that the deed to Mrs. Murphy was valid. The remedy, however, was the same in that case as in others, namely, an appeal or writ of error."

And, in Howard v. Scott, 225 Mo. 685, 712, it was pointedly said by LAMM, P. J., speaking for this division of our court: "Broadly speaking, it may be said that false evidence or a lying allegation in a petition is not sufficient to overturn a judgment after the term by a direct proceeding in equity; the idea being that there should be an end to a lawsuit, that every man should have his day in court— not two days—that for the general welfare of society litigants might better be held to take their chances of false swearing on the stand and false allegations in pleadings rather than to allow the reagitation of matters once passed into the category of things adjudicated; for if equity on such ground vacate a judgment by a new one, why not overturn the latter by a new suit and so on without end. So that it

is frequently laid down that fraud which will overturn a judgment must arise on extrinsic and collateral matters, and not on the very issues presented by the pleadings and passed upon at the trial. . . . But the doctrine has been uniformly laid down broadly as announced in Wabash Railroad Co. v. Mirrielees, 182 Mo. 126, and the cases there collated and cited, to the effect that false swearing and false averments in pleadings do not give rise to an action in equity to set aside a judgment for fraud. Such, then, may be taken as accepted doctrine. There must be some fraud committed on the court itself in the procurement of the judgment, arising extrinsically· or collaterally to the issue tried, or on the party himself arising in the same way.''

IV. The judgment of the trial court herein, in determining the interests of the respective parties in the land, awarded to the defendant Louis N. Bowman ''an undivided one-fourth interest in said lands of the life estate of William L. Bowman, which said interest is subject to the lien of $1900 as aforesaid, that is, the sum of $1825, with interest at the rate of six per cent per annum since April 8, 1922.'' This quoted part of the judgment is predicated upon the finding of the trial court, incorporated in said judgment, that the plaintiff bank, on April 8, 1922, purchased for the sum of $1825 the interest of William L. Bowman in the land, under foreclosure of the deed of trust, dated February 11, 1919, executed and delivered by William L. Bowman to Robert Stanton, trustee, to secure the payment of his debt of $1900 to the First National Bank of King City, but the notice or advertisement of which foreclosure sale was defective ·because published only twenty-nine days, instead of thirty days, as required by the terms of said deed of trust, and, therefore, that the lien of said deed of trust had not been extinguished; and that William L. Bowman had conveyed, on April 4, 1921, one-half of his interest in the land to George Ward and William Millan, subject to the lien of said deed of trust, and that thereafter, on September 14, 1925, William Millan had conveyed all of his right, title and interest in said land to the defendant Louis N. Bowman, who took and acquired the same subject to the unextinguished lien of said deed of trust. While appellant Louis N. Bowman assigns error in such holding and judgment of the trial court, he does not make further mention of the point in his brief, or cite any judicial authority in support of his assignment of error. Under such circumstance, we might well and properly treat the assignment of error as having been abandoned by the appellant. Moreover, the appellant seemingly admits that the former interest of his father, William L. Bowman, in the land is subject to the unextinguished lien of said deed of trust, for he says in

his printed brief herein: ''The court should decree that the life estate formerly owned by the father was (is) subject to the $1900 incumbrance, as evidenced by the deed of trust as given by the father to the plaintiff bank.'' But in any view, and notwithstanding that we are inclined to treat the assignment as abandoned by appellants, we deem the judgment of the trial court to be right, and in accord with the equitable rule or doctrine of subrogation. [Valle's Heirs v. Fleming's Heirs, 29 Mo. 152; Berry v. Stigall, 253 Mo. 690; Holland Banking Co. v. See, 146 Mo. App. 269; Davenport v. Timmonds, 157 Mo. App. 360.]

Finding no reversible error in the record before us, the judgment *nisi* must be affirmed, and it is so ordered. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.