## Wright's Estate.

*Life estate—Remainderman—Expenditures for preservation of estate—Trusts and trustees.*

Where the Orphans' Court makes a decree authorizing a trustee to expend out of the principal of the trust estate a sum sufficient to improve dilapidated and untenantable real estate, so as to avoid an inevitable sale to prevent the real estate from becoming a charge upon the life tenant, and the court further decrees with the consent of the life tenant that the trustee shall set aside one-third of the net income from the property so improved to reimburse the principal of the trust estate, and it appears that as a result of the improvements, the property is saved and in the course of time doubles in value, the life tenant has the right, after nearly a third of the expenditure has been reimbursed to principal out of income, to have the decree of the court modified so as to relieve him from the further application of one-third of his income to the reimbursement of principal.

Argued Jan. 3, 1912. Appeal, No. 83, Jan. T., 1911, by S. Megargee Wright, from decree of O. C. Phila. Co., July T., 1895, No. 104, dismissing petition to modify prior decree in Estate of John Wright, deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Petition to modify prior decree of the Orphans' Court.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the petition.

*Frederick B. Vogel,* with him *Henry K. Fox,* for appellant.—Primarily principal should pay for improvements and income for repairs: Little v. Little, 161 Mass. 188 (36 N. E. Repr. 795); Lutz's Estate, 27 W. N. C. 403; Tragbar's Estate, 2 Pa. D. R. 407; Bradley's Estate, 3 Pa. D. R. 359; Culp's Estate, 5 Phila. 97.

If the decrees of 1895 and 1897 are permitted to stand

as made, the inequitable iniquitous result is attained of the life tenant's compulsory donation of the entire cost of the improvements and of the remaindermen exclusively deriving the benefit (A) of the increase of the value, if any, in addition to (B) the contributions of the life tenant: Phillip's Estate, 12 Pa. D. R. 690; Smith's Estate, 53 Pitts. Leg. J. 136.

*A. H. Wintersteen*, for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, February 5, 1912:

In 1895 John Wright died testate, leaving to survive him one son, Samuel Megargee Wright. He devised his residuary estate to his executor, the Girard Trust Company, "In trust to collect and receive the rents and income of the real estate and the interest and dividends of the personal estate, and after deducting all expenses incident to the execution of the trust to pay the same in quarterly yearly payments to my son Samuel Megargee Wright for and during the full end and term of his natural life, in such way and manner that the same shall not be subject to or liable for his debts, contracts or engagements in any way whatever;" upon his son's death to pay unto the latter's wife, Heloise C. Wright, if surviving, an annuity during widowhood of $3,000, then to pay for the support, maintenance and education of the testator's grandchildren an annual sum not exceeding $2,000 for each, and ultimately to convey the corpus to such grandchildren as should be living at the son's death and to the issue, per stirpes, of any then deceased.

At the time of his decease the testator was seised of an undivided one-third interest in certain real estate in the City of Philadelphia which passed to the Girard Company as trustee of the residuary estate. These properties were in such a dilapidated condition that they were untenantable, and the trustee petitioned the

Orphans' Court for leave to join with the other owners in erecting new buildings at an expenditure out of the trust estate of not more than $17,500. The life-tenant and his wife filed answers and agreed that from time to time one-third of the annual income from the real estate in question should be retained by the trustee to reimburse the principal fund for the expenditure thus to be incurred; and the court decreed that, "the said trustee shall set aside in each and every year a sum equal to one-third of the net income derived from the property to be improved, so as to create a fund for the purpose of reimbursing the principal of the said trust estate for the expenditures hereby authorized to be incurred for the said improvement."

The trustee expended a total of $16,736, and down to May 9, 1910, had retained $6,355.24, income to reimburse the principal. In May, 1910, Samuel Megargee Wright petitioned the Orphans' Court to modify its decree so that no further income should be retained, and that he be paid the money theretofore withheld. The petitioner urged that the property had greatly increased in value, and the trustee admitted this fact in its answer. The petition was referred to a master who reported that its prayers should be refused on the ground that the application was premature, because it was impossible to determine "at this time what value the improvements will have when the life-estate expires." The Court below confirmed the report of the master and dismissed the petition; the life-tenant has appealed.

Ordinarily the cost of permanent improvements of the character of those in this case would be paid from principal and not out of income, but arrangements for the mutual benefit of all concerned, such as here decreed, whereby the income bears the burden, are not unusual in this State. But it is always within the power of the Court, where the interests of third parties do not intervene, to reconsider its decrees and to control and

modify such arrangements according to changed circumstances, as justice and equity may require.

The evidence clearly shows that the property has doubled in value since and with the improvements, and that it has been changed from unrentable real estate into a large revenue producer. While the Orphans' Court adopted the findings of its master, who attributed the first gain entirely to the increase in the value of the land, we agree with the dissenting opinion filed by Judge Lamorelle of the Court below to the effect that the testimony does not support that view. This large increase in value took place subsequent to the improvement, and the testimony is that had the property not been improved it would have been necessary to sell it in 1895 to prevent its becoming a charge upon the life-tenant, who was the primary object of the testator's bounty, for the benefit of the remaindermen; furthermore the other owners in common desired to change the property into a revenue producer, and had the arrangements for the financing of the improvement not been entered into at that time it is probable that a sale in partition would have been forced upon the trustee. The improvement enabled the trustee to hold the land and to gain the great increase in value which has taken place, for the benefit of the remaindermen as well as of the life-tenant; and the time has arrived when no further contribution should be taken from income. A careful review of this whole record convinces us that, while the $6,355.24 retained by the trustee need not now be refunded out of the principal of the estate, justice and equity require that the life-tenant be granted relief to the extent indicated. We are not called upon and it would serve no useful purpose to consider the other points urged before us by the appellant but not raised in the Court below.

The assignment of error is sustained and the record is remitted to the Orphans' Court with directions to

modify its decree in accordance with the view here expressed. The costs of this appeal to be paid out of the income of the estate.