[Sac. No. 3266. In Bank.—September 16, 1921.]

F. G. ATHEARN, Petitioner, v. G. W. NICOL et al., Judges of the Superior Court, Respondents.

[1] SUPERIOR COURT—INCREASE IN NUMBER OF JUDGES OF COUNTY—POWER OF GOVERNOR.—The Governor of the state is authorized to temporarily increase the number of superior court judges in a county by a request that judges from other counties sit within that county as superior court judges.

[2] DRAINAGE DISTRICT—DETERMINING VALIDITY OF ASSESSMENTS—JURISDICTION OF COURT.—Assuming that the matter pending before a superior court of hearing and determining a question as to the validity and proper apportionment of assessments of a drainage district is a judicial one, as the statute expressly declares, the court has jurisdiction of the matter, and three superior court judges selected by the Governor to sit in that court in the matter have jurisdiction to dispose of the same.

[3] ID.—DISQUALIFICATION OF JUDGE.—The judge of the superior court of a county is disqualified, under subdivision 5 of section 170 of the Code of Civil Procedure, from hearing proceedings to determine the validity and proper apportionment of assessments of a drainage district when they affect or relate to any real property within his county.

[4] SUPERIOR COURT—EXTRA JUDGES.—There may be as many sessions of the court as there are superior court judges in a county, including those assigned thereto by the Governor and those acting *pro tempore*, and all of these judges can also sit together at one time for the trial of a case; and the constitution contemplates a session held by one or more judges as well as by one and by all.

[5] ID.—JUDGES SITTING TOGETHER.—The constitution authorizes three judges of the superior court, if they choose, to sit together for the purpose of hearing any proceeding over which the court itself has jurisdiction.

[6] ID.—DETERMINATION BY MAJORITY.—The general rule is that where authority is conferred upon a court of more than one judge, the majority can render decisions of the court in the absence of express statutory or constitutional provision to the contrary.

[7] ID.—JURISDICTION—SUFFICIENCY OF COMPLAINT.—If a court sitting to determine the validity and apportionment of assessments of a drainage district has jurisdiction and authority to pass upon the validity of the assessments and the questions arising with relation thereto, the sufficiency of the complaint or document filed to invoke that jurisdiction is one to be determined by it upon the hearing and does not affect its jurisdiction to pass thereon.

[8] DRAINAGE DISTRICT—DETERMINATION OF VALIDITY OF ASSESSMENTS —JUDICIAL PROCEEDINGS.—The legislature, under the act relating to the issuance of bonds for assessments for improvements in the Sacramento and San Joaquin drainage district (Stats. 1919, p. 1092, secs. 4, 5), contemplated a court proceeding, and provided that such proceeding should be commenced in the superior court, and upon a judgment by it affirming the validity of the bonds no further attack is permitted thereon.

APPLICATION for Writ of Prohibition. Writ denied.

The facts are stated in the opinion of the court.

Haven, Athearn, Chandler & Farmer, for Petitioner.

Elston, Clark & Nichols, *Amici Curiae,* for Petitioner.

Frank Freeman for Respondents.

Devlin & Devlin, *Amici Curiae,* for Respondents.

Thomas Rutledge, Brown & Alberry and Mastick & Partridge for West Side Land Owners.

WILBUR, J.—The petitioner asks for a writ of prohibition directed to the respondents, who are judges of the superior court, requiring them to desist from the contemplated trial of certain proceedings instituted under and by virtue of an act of the legislature (Stats. 1919, p. 1092, secs. 4, 5) relating to the issuance of bonds for assessments

for improvements in the Sacramento and San Joaquin drainage district. The respondents have been designated by the Governor to sit as judges of the superior court in and for the county of Sutter to hear and determine the questions that may be raised before them concerning the validity and proper apportionment of assessments of said district aggregating over eight million dollars. The procedure followed in this case is in accordance with an act of the legislature of the state of California (Stats. 1919, p. 1092, secs. 4 and 5), supplementing other legislation (Stats. 1911, Ex. Sess., p. 117; Stats. 1913, p. 252; Stats. 1915, p. 1338; Stats. 1919, pp. 1091, 1122, 1209) concerning the organization and powers of said district. By such legislation authority is given for the construction and maintenance of improvements in said district and the levying of assessments upon the property within the district.

The statute under consideration provides that after the levy of the assessment by the assessor and the approval thereof by the reclamation board a proceeding shall be instituted by the reclamation board in the "Superior Court of the State of California in and for the county" wherein a majority of the realty affected by the assessment is contained. Upon the filing of the assessment with the clerk of said court notice is given by publication of the date of the hearing of objections to such assessment. It is provided that the court shall hear objections to the assessment and render a decision thereon, which shall be final and conclusive (Stats. 1919, pp. 1092, 1095, sec. 12), and from which no appeal can be taken and no new trial can be granted (sec. 8, p. 1094). This proceeding is to be heard before three judges of the superior court selected by the Governor from counties not within the drainage district.

Acting in accordance with the provisions of this legislation, the reclamation board has filed with the county clerk of the county of Sutter its assessment and the Governor has designated the three respondents to hear such proceedings, and they are now proposing to hear the proceedings, unless prohibited from so doing by this court.

It is claimed that the legislature had no authority to direct the Governor to nominate three of the judges of the superior court from counties other than the one in which the proceeding is filed to hold such court. This may be con-

ceded, and yet if the Governor had the authority to do so, under the constitution, without the request or direction of the legislature, and he has exercised that authority by the appointment of the respondents, we need not concern ourselves with the question of whether or not the legislature has any power to enact such a statute.

We will first consider the authority of the Governor under the constitution itself. Section 8 of article VI of the constitution provides that a judge of any superior court may hold a superior court *in any county,* at the request of a judge of the superior court thereof, *and upon the request of the Governor it shall be his duty so to do.* While, no doubt, the ordinary course of procedure has been for the Governor to name a judge of another superior court to sit for or in the place of some disqualified judge of the county in which he is requested to sit, it is clear from the constitution that any superior court judge of the state of California can hold a superior court in any county of the state of California when requested so to do by the Governor. The number of judges of the superior court in the county to which he is assigned by the Governor is thus increased. And, if the Governor, in the exercise of his prerogative, assigns three judges to a given county in addition to those provided by the constitution and legislature for the county, the number of judges who can hold separate sessions of the superior court in the county is thus increased by the number so assigned by the Governor to the county. In addition to the number of superior court judges provided by the legislature and elected by the people and those acting upon the request of the Governor, the constitution provides for judges *pro tempore* to try specific cases upon the agreement of the parties thereto. This matter of *pro tempore* judges is only germane to the discussion in that it shows that there may be many more judges exercising the power and authority of superior court judges in a given county at a given time than those designated in the constitution or by the legislature. For instance, in Los Angeles County the constitution provides for two superior court judges (art. VI, sec. 6). This number has been increased by the legislature to twenty-three (Stats. 1921, p. 1177).

[1] The Governor of the state is thus authorized to temporarily increase the number of superior court judges in a

county by a request that judges from other counties sit within that county as superior court judges.

Before the latest increases in the number of judges of the superior court in Los Angeles and San Francisco several extra sessions of the superior court were held simultaneously with and in addition to all the usual departments of the superior court. Sometimes as many as three or four extra sessions were held at one time. Superior court judges for such extra sessions were designated by the Governor from other counties and his authority to do so has never been questioned—indeed, in view of the plain language of the constitution it could not well be questioned. It is, therefore, apparent that there is nothing illegal in the selection by the Governor of the respondents to sit in the county of Sutter as superior court judges. [2] Assuming that the matter involved is a judicial question now pending before the superior court of the county of Sutter, as the statute expressly declares, and that the respondents have severally been selected to hold court in that county, it is obvious that the court has jurisdiction of the matter in question and that the respondents acting as judges of that court have jurisdiction to proceed to dispose of the matter.

Before considering the question as to whether or not the three respondent judges can sit together and hear the proceedings, a preliminary question should be mentioned.

[3] The judge of the superior court of the county of Sutter is disqualified to hear these proceedings by reason of subdivision 5 of section 170 of the Code of Civil Procedure, which disqualifies a judge of a county from hearing such proceedings, when they affect or relate to any real property within his county. This provision has been held constitutional (*Sacramento & San Joaquin Drainage Dist.* v. *Rector,* 172 Cal. 385, [156 Pac. 506]). From this it follows that the judge of the superior court of the county of Sutter, elected by the people thereof, is disqualified to try these proceedings and that the three respondents properly assigned by the Governor to that county are each qualified and empowered to dispose of the matter.

So far we have considered only the authority of the Governor to assign these judges to the superior court of Sutter County. When so assigned they derive their powers form the constitution itself. It remains to consider the ques-

tions of whether or not they can sit together and dispose of the matter and whether the legislature has any authority to direct that they shall do so. This involves a further consideration of the terms of section 8 of article VI of the constitution. This section provides: ''There may be as many sessions of a Superior Court at the same time as there are judges thereof, including any judge or judges acting upon request, or any judge or judges *pro tempore.* The judgments, orders, acts and proceedings of any session of any Superior Court held by *one or more judges acting upon request,* or judge or judges *pro tempore,* shall be equally effective as if the judge or all of the judges of such court presided at such session.'' (Italics ours.) Section 7 of the same article provides as follows: ''In any county, or city and county, other than the City and County of San Francisco, in which there shall be more than one judge of the Superior Court, the judges of such court may hold as many sessions of said court at the same time as there are judges thereof, and shall apportion the business among themselves as equally. as may be,'' while, in the city and county of San Francisco, by the terms of section 6 of article VI of the constitution, it is also provided that there may be as many sessions of said court at the same time as there are judges thereof, it is provided that they shall select a presiding judge, who shall distribute the business of the court among the judges thereof and prescribe the order of business. It is then provided, and this provision would seem to be applicable to all superior courts, ''The judgments, orders, and proceedings of any session of the Superior Court *held by any one or more of the judges* of said courts, respectively, shall be equally effectual as if *all the judges of said respective* courts presided at such session.'' (Italics ours.) [4] From these sections it is apparent not only that there may be as many sessions of the court as there are superior court judges in the county, including those assigned thereto by the Governor and those acting *pro tempore,* but also that all of these judges can sit together at one time for the trial of the case, hence, the provision that the decision of one judge sitting at a separate session of the superior court is equally effective as though all the judges of the superior court were sitting and rendering judgment. The constitution also contemplates a session held

by "one or more judges" as well as by one, and by all. The authority is found in section 8, above quoted. "The judgments, etc., of any session of any superior court held by *one or more judges acting upon request,* or judge or judges *pro tempore,* shall be equally effective as if the judge or all of the judges of such court presided at such session." (Italics ours.) The question of whether or not the Governor has power to request three superior court judges to sit together and try a single case and thus impose upon them the obligation to do so is not necessarily involved in this proceeding, for if the three judges selected by the Governor and requested to sit in Sutter County become thereby invested with the authority so to do under the constitution, they can so act, if they so desire, by reason of their constitutional authority to sit together in the trial of a single case, and this it is alleged they propose to do.

It is provided in section 7 of article VI of the constitution, above quoted, that the judges of the superior court of counties other than San Francisco "shall apportion the business among themselves as equally as may be." If we concede that the legislature had no power to enact legislation requiring that a certain proceeding shall be heard before a session of the superior court presided over by three judges and that the statute so providing has no more effect than as a formal request by the legislature that it be done, and if we further concede that while the Governor has authority to name three judges and request that they sit in the county for the purpose of trying such a proceeding, that such request has no other effect than to create said judges for the time being judges empowered to hold sessions of the superior court in and for the county of Sutter, still if they then have the discretion to sit together for the consideration of a case or cases submitted to that court, and if they desire to accede to the request of the Governor and to the request of the legislature so to do, their consent so to do and their action in pursuance of such request and purpose constitutes them judges of the superior court of the county of Sutter authorized by the constitution to sit together for the disposition of any case or cases brought before them, including the case they are thus proceeding to try. There is, therefore, no ground for interference by us because of the alleged lack of power of the legislature to

create a department of the superior court of the county of Sutter for the purpose of trying such an action and no reason to consider the authority of the Governor to compel judges so to act. The question before us thus reduces itself to this simple proposition: Can three judges of the superior court of the county of Sutter sit together for the hearing of the proceeding in question? [5] To this question the constitution makes a plain answer, that three judges of the superior court may, if they choose, sit together for the purpose of hearing any proceeding over which the court itself has jurisdiction.

Other constitutional questions are raised by the petitioner. It is claimed that the legislature had no right to direct that two out of three judges may render a decision in the case. Unless the constitution authorizes two of the three judges to render a decision where three sit together, it is clear that the legislature had no power to make such a provision. [6] The general rule, however, is that where authority is conferred upon a court of more than one judge, the majority can render decisions of the court in the absence of express statutory or constitutional provision to the contrary. (15 Corpus Juris [Courts], sec. 362, p. 965; *Austin v. Harbin,* 95 Tenn. 598, [32 S. W. 826].) That question, however, is not involved here so far as the case has proceeded. The respondents have agreed to sit together and to try the same and so far have not been called upon to rule upon any matters involved in the case. If upon the conclusion of the case two judges take one view and one another, the question as to whether or not two of the three judges can decide the case would be important.

Petitioner contends that the filing of the assessment cannot be treated as the filing of a complaint to validate the assessment, for to do so would be to violate the constitutional provision prohibiting the legislature from special legislation relating to the practice of the courts. [7] This question need not be considered upon this hearing, for the reason that if the court has jurisdiction and authority to pass upon the validity of the assessment and the questions arising with relation thereto, the sufficiency of the complaint or document filed to invoke that jurisdiction is one to be determined by them upon the hearing and does not affect their

jurisdiction to pass thereon. (*Ex parte Ruef*, 150 Cal. 665, [89 Pac. 605].)

It is claimed that the legislation, which prohibits the granting of a motion for a new trial in such a proceeding and deprives the defeated party of a right to appeal, is unconstitutional for the reason that it constitutes a special rule of practice. If this be conceded, it is immaterial. That question will arise when the jurisdiction of the courts is invoked either upon a new trial or upon an appeal.

The respondents argue at length that in the exercise of their powers under the statute in question they are not acting as judges of the superior court, but as a special board selected for the purpose of determining the particular matter with relation to the assessments, and that while so acting they are merely one of the boards charged with *quasi*-judicial functions in the collection of a tax. [8] It is very clear that the legislature contemplated a court proceeding. It provided that the judicial proceedings to validate the assessment should be commenced in the superior court. It declared the proceedings to be judicial proceedings, and it is manifest throughout that the whole scheme was to have a judgment of the superior court affirming the validity of the bonds before they were issued and to permit no other attack thereon, and there is no doubt that the proceedings are in a large part judicial. While many interesting and important questions are thus raised by the petitioner, the only thing that we are called upon to decide, or can properly pass upon in this proceeding, is the jurisdiction of the respondents to proceed in the matter. It is clear that they have such jurisdiction. We are not concerned at the present time with their method of exercising that jurisdiction.

The writ will be denied.

Shaw, J., Sloane, J., Shurtleff, J., Angellotti, C. J., Lennon, J., and Lawlor, J., concurred.