MURRELL v. STOCK GROWERS' NAT.
BANK OF CHEYENNE et al.
No. 1044.

Circuit Court of Appeals, Tenth Circuit.
Dec. 26, 1934.

Chas. A. Russell, of Washington, D. C. (W. L. Freeland and John M. Murrell, both of Miami, Fla., on the brief), for appellant.

John U. Loomis and C. R. Ellery, both of Cheyenne, Wyo., for appellees.

Before LEWIS, PHILLIPS, and Mc-DERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

John W. Connor died testate on October 21, 1906. He left surviving him a widow Frances B. Connor, a daughter Ethel Connor Mullen formerly Ethel Connor Ernest, .and a granddaughter Ethel Ernest Browning, now Murrell. His will and a codicil thereto were duly admitted to probate. On October 2, 1908, the district court of Albany County, Wyoming, exercising its probate jurisdiction, entered a decree of distribution reading in part as follows:

"It is, * * * Decreed by the court that * * * said estate be distributed, paid and delivered over to the devisees hereinafter named in the manner and form following, to-wit:

"Unto the said Fannie B. Connor, widow of said John W. Connor, deceased, and Ethel C. Ernest, daughter of said John W. Connor, deceased, share and share alike, all of the property, real, personal, and mixed of said estate, and the rents, issues and profits thereof, during and so long as they both shall live, and upon the death of said Fannie B. Connor, the whole of said property remaining with the rents, issues and profits thereof unto said Ethel C. Ernest, during her natural life, and upon the death of said Ethel C. Ernest, unto her child or children or heirs or devisees of child or children absolutely, and in the event of the death of said Ethel C. Ernest, before the death of said Fannie B. Connor, the share of said Ethel C. Ernest. shall thereupon go in remainder to her child or children, or heirs or devisees of her child or children, absolutely."

The estate included lots 13, 14, and 15, block 190, Laramie, Wyoming. Mrs. Connor and Mrs. Mullen leased such lots to the Connor Hotel Company, a corporation, for a term of 99 years. They own all the stock of the Hotel Company. On January 1, 1912, the Hotel Company executed a mortgage on. its leasehold to secure a loan of $40,000.. The proceeds of the loan were used to construct a hotel building on the leasehold.

Mrs. Connor and Mrs. Mullen, out of the rents, issues, and profits of such estate, expended $45,000 in the erection of buildings on unimproved lots forming a part of such estate. The expenditures for improvements. were made in good faith and increased the annual rental from the property more than $5,000.

On January 26, 1920, the district court of Albany County confirmed a sale of certain land constituting a part of the estate, and appointed a trustee to take charge of the proceeds of the sale, $16,575.25. The trustee invested the trust funds in bonds. Later he sold the bonds and deposited the trust funds in the First National Bank.

The growth of Laramie rendered the facilities of the hotel inadequate and made it advantageous and desirable to construct an addition thereto at a cost of $90,000,

In March, 1925, Mrs. Connor commenced a suit numbered 4634 in the district court of Albany County against Ethel Connor Mullen, Ethel Ernest Browning, John W. Connor, Theresa Connor, Fanny Burk, Agnes Burk, Mary Burk Clark and the unknown heirs of John W. Connor, Theresa Connor, Fanny Burk, Agnes Burk and Mary Burk Clark. In her petition Mrs. Connor set out the will, the codicil, the decree of distribution and the foregoing facts, and alleged that the will provided when Mrs. Mullen should attain the age of 26 years, one-half of all of the estate should vest absolutely in her and the other one-half should remain to the use of Mrs. Connor with all rents, issues and profits thereof during her natural life; that the codicil provided all of testator's property and the rents, issues and profits thereof should go to Mrs. Mullen and Mrs. Connor "during their natural lives" and if Mrs. Mullen should die without issue, one-half of the "estate then remaining" should go to John W. Connor and Theresa Connor, testator's nephew and niece, respectively, and "to the heirs of" such nephew and niece, and to "their heirs share and share alike forever" and the other one-half to Fanny Burk, Agnes Burk, and Mary Burk now Mary Clark, nieces of testator's wife, but in the event Mrs. Mullen should have issue of her body and such child or children should survive her, then upon the death of Mrs. Connor and Mrs. Mullen the "estate then remaining" should go to such child or children, share and share alike "in title absolute forever."

She further alleged "that the defendants or some of them have at all times threatened to contest" the will, that a question had arisen as to the validity of contingent remainders given to such nephew and nieces, that the will had not been construed, and that it was necessary for the court to declare the rights of Mrs. Connor, Mrs. Mullen, and Mrs. Murrell thereunder.

She prayed that the will be construed and the rights, duties, and powers of the beneficiaries therein be determined; that Mrs. Connor and Mrs. Mullen be reimbursed for advances made to improve the property; that Mrs. Connor be authorized to apply the trust funds in payment of the balance due on the existing mortgage and use the remainder in further improving lots 13, 14, and 15, and that she be authorized to make such conveyances, trust deeds, or mortgages as might be necessary to secure the loan of funds to construct such addition to the hotel.

Mrs. Mullen filed an answer in No. 4634 in which she alleged that such will provided when Mrs. Mullen should attain the age of 26 years, if Mrs. Connor should then be living, a distribution of the estate should be made and one-half should vest in Mrs. Mullen, that the other half should remain to the use of Mrs. Connor during her natural life and on her death should vest in Mrs. Mullen if living, and if she had died "leaving issue of her body then to her children share and share alike," and if she had died without issue then to Fanny Burk, Agnes Burk and Mary Burk Clark equally; that such codicil provided that the "use" of all of testator's property and the "rents, issues and profits thereof," should go to Mrs. Connor and Mrs. Mullen "during their natural lives"; that if Mrs. Mullen should die without issue, one-half of the "estate then remaining" should go to John W. Connor and Theresa Connor and the other one-half to Fanny Burk, Agnes Burk and Mary Burk Clark; and that if Mrs. Mullen should die leaving surviving issue, all the estate "then remaining" should go to such issue "in title absolutely forever," and that the codicil closed with these words:

"My intentions in making this codicil to my will is to give to my wife and daughter the use and benefit of my estate and all the rents, issues and profits thereof as long as they both shall live share and share alike and upon the event of the death of my wife that my daughter shall have all said rents, issues and profits and in the event that my daughter die having issue then that her child or children shall have half of said rents, issues and profits and my wife the other half but in the event my daughter die before my wife and without issue then all said rents, issues and profits shall go to her use during her natural life and upon her death to the nephew and nieces as hereinbefore provided."

She further alleged "that under no provision of said will does the title of said estate vest either during the life of a person in being at the death of * * * Connor, nor within twenty-one years thereafter, nor during the life of any one then in being when the said * * * Connor died nor for twenty-one years in any person or persons whomsoever."

She further alleged that the validity of the lease had been called in question.

In such answer Mrs. Mullen stated that she joined with Mrs. Connor "in this action, for a decree and a declaratory judgment defining and fixing the status and rights" of

themselves "and of all others interested in the said estate * * * as heirs, legatees or otherwise"; and that she admitted the facts alleged in the petition of Mrs. Connor and joined in the prayer thereof. She also prayed that the Hotel Company be made a party and the validity of the lease determined.

Mrs. Murrell appeared and filed an answer in No. 4634 in which she stated that she was born May 12, 1903, resided in Los Angeles, submitted herself to the jurisdiction of the court, reaffirmed the answer of Ethel Connor Mullen, and joined in the application "for a declaratory judgment in the matter of the construction and determination of the will."

On August 21, 1925, the state court entered a decree in No. 4634 wherein it quieted the title to the real estate of which testator died seized, including the hotel site, against all the defendants except Mrs. Mullen and Mrs. Murrell; and adjudged that Mrs. Connor has a life estate in such property, with full power of sale and disposition and the right to share equally with Mrs. Mullen in the rents, issues and profits thereof, with the remainder over of so much as remained at her death to her grandchild Mrs. Murrell; that Mrs. Mullen has an estate in fee simple to one-half of such property, and the right to share equally with Mrs. Connor in the rents, issues and profits of all of such property; and that Mrs. Connor and Mrs. Mullen have full power and authority to execute deeds to any or all of the estate and to execute, on such terms as they shall deem proper, trust deeds or mortgages thereof to secure such sums as they shall deem expedient; that the lease is valid; and that Mrs. Connor and Mrs. Mullen are entitled to reimbursement for the $45,000 advanced by them for the erection of improvements on lots of the estate.

The Stock Growers' National Bank advanced $92,000 for the construction of the addition to the hotel. The loan was evidenced by negotiable bonds and secured by deed of trust on lots 13, 14, and 15, executed by the Hotel Company, Mrs. Connor, and Mrs. Mullen.

On November 8, 1932, Mrs. Murrell commenced this suit seeking to have the decree in No. 4634 and the deed of trust declared null and void, and to enjoin the Hotel Company from paying rentals to the bank. She alleged three principal grounds for the relief sought.

1. That Mrs. Murrell had been induced by extrinsic fraud to appear in No. 4634.

2. That the proceedings in No. 4634 were a collateral attack upon the decree of distribution.

3. That subject-matter of the proceedings in No. 4634 was not within the jurisdiction of the state court.

Prior to the bringing of this suit the Stock Growers' Bank had transferred all of the bonds to third persons, who purchased them for value and without notice of the claims of Mrs. Murrell. Bonds of the face value of $54,000 remain unpaid.

From a decree for defendants, plaintiff has appealed.

### I. Fraud.

A federal court cannot set aside the judgment of a state court on the ground of extrinsic fraud. In cases where it has jurisdiction the federal court may, on the ground of extrinsic fraud in obtaining a state court judgment, enjoin a party guilty of such fraud from enjoying the fruits of such judgment or compel him to surrender it. United States v. Mashunkashey (C. C. A. 10) 72 F.(2d) 847, 851; Folk v. Monsell (C. C. A. 10) 71 F.(2d) 816, 819.

Here the proof established no fraud on the part of Mrs. Connor, the Stock Growers' Bank, or the present bondholders. It did show that the answer signed and filed by Mrs. Murrell was sent to her by Mrs. Mullen accompanied by a letter which stated that the suit was to clear the title to the estate, and that the rights of Mrs. Murrell were protected.

The facts do not warrant any relief against Mrs. Connor, the Stock Growers' Bank, or the bondholders on the ground of fraud.

### II. Jurisdiction.

Many questions presented for determination in No. 4634 had not been determined by the decree of distribution.

The authority of Mrs. Connor and Mrs. Mullen to lease the estate, to erect permanent improvements on lots 13, 14, and 15, to mortgage the estate to secure funds with which to erect such improvements, and their right to reimbursement for improvements made, were left at large by the decree of distribution.

Indeed there is basis for the contention that the decree of distribution left open and undetermined the question as to whether Mrs. Connor did not take a life estate with

implied power of disposition, in that it provides that upon her death "the whole of said property remaining shall pass to another." Trustees Presbyterian Church v. Mize, 181 Ky. 567, 205 S. W. 674, 2 A. L. R. 1237, and note page 1310; Mitchell v. Board of Curators of Morrisville College, 305 Mo. 466, 266 S. W. 481.

In Story's Equity Pleadings (10th Ed.) § 338, p. 325, it is said:

"A supplemental bill may also be filed, as well after, as before a decree; and the bill, if after a decree, may be, either in aid of the decree, that it may be carried fully into execution; or that proper directions may be given upon some matter omitted in the original bill, or not put in issue by it, or by the defence made to it; or to bring forward parties before the court; or it may be used to impeach the decree, which is the peculiar case of a supplemental bill, in the nature of a bill of review."

See, also, Continental O. Co. v. Osage O. & R. Co. (C. C. A. 10) 69 F.(2d) 19, 25; Osage O. & R. Co. v. Continental O. Co. (C. C. A. 10) 34 F.(2d) 585, 589.

■ The petition in No. 4634 in so far as it sought directions upon matters omitted from or not determined by the decree of distribution, was a supplemental bill; and in so far as it sought a different adjudication as to the rights, interests, and estates acquired under the will and codicil by Mrs. Connor and Mrs. Mullen, it was a supplemental bill in the nature of a bill of review.

■ Jurisdiction of the subject-matter is the power to hear and determine cases of the general class to which the proceedings in question belong.[1] It does not depend upon the sufficiency of the complaint or petition, the ultimate establishing of the right to the relief sought, the regularity of the proceedings, or the correctness of the decision rendered.[2]

■ District courts in Wyoming are courts of general jurisdiction.[3]

■ Under the Declaratory Judgment Act of Wyoming, district courts in that state have the power, upon the petition of any person interested, to determine "any question of construction or validity arising under" a will, to declare the "rights, status or other legal relations thereunder," and "to determine any question arising in the administration of" an "estate."[4]

---

[1] United States v. Ness (C. C. A. 8) 230 F. 950, 953, Ann. Cas. 1917C, 41; Ex parte Craig (C. C. A. 2) 282 F. 138, 152; Noxon Chem. P. Co. v. Leckie (C. C. A. 3) 39 F.(2d) 318, 320; United States v. New York & O. S. S. Co. (C. C. A. 2) 216 F. 61, 66; Curtis v. Albritton, 101 Fla. 853, 132 So. 677, 680; State Board of Dental Examiners v. Savelle, 90 Colo. 177, 8 P.(2d) 693, 696, 82 A. L. R. 1176. See, also, Reynolds v. Stockton, 140 U. S. 254, 268, 11 S. Ct. 773, 35 L. Ed. 464; Finlen v. Skelly, 310 Ill. 170, 141 N. E. 388, 392; First Nat. Bank & T. Co. v. Bowman, 322 Mo. 654, 15 S.W.(2d) 842, 850; State v. Dist. Court of Eighth Jud. Dist., 33 Wyo. 281, 238 P. 545, 547; Malone v. Meres, 91 Fla. 709, 109 So. 677, 685.

[2] United States v. Ness, supra; Finlen v. Skelly, supra; First Nat. Bank & T. Co. v. Bowman, supra; Nettleton Bank v. McGauhey's Estate, 318 Mo. 948, 2 S. W.(2d) 771, 775; People v. Brewer, 328 Ill. 472, 160 N. E. 76, 79; Athearn v. Nicol, 187 Cal. 86, 200 P. 942, 945; State v. Dist. Court of Eighth Judicial Dist., supra; Malone v. Meres, supra; Radil v. Sawyer, 85 Neb. 235, 122 N. W. 980; Quagon v. Biddle (C. C. A. 8) 5 F.(2d) 608, 610; Ex parte Watkins, 32 U. S. (7 Pet.) 568, 572, 8 L. Ed. 786; Burnet v. Desmoines y Alvarez, 226 U. S. 145,

147, 33 S. Ct. 63, 57 L. Ed. 159; Binderup v. Pathe Exchange, 263 U. S. 291, 307, 44 S. Ct. 96, 68 L. Ed. 308; Lamar v. United States, 240 U. S. 60, 64, 36 S. Ct. 255, 60 L. Ed. 526; Geneva Furn. M. Co. v. Karpen, 238 U. S. 254, 258, 259, 35 S. Ct. 788, 59 L. Ed. 1295; The Fair v. Kohler Die Co., 228 U. S. 22, 25, 33 S. Ct. 410, 57 L. Ed. 716.

[3] Section 10, art. 5, Wyoming Constitution, in part provides:

"District courts—Jurisdiction of.

"The district court shall have original jurisdiction of all causes at law and in equity and in all criminal cases, of all matters of probate and insolvency and of such special cases and proceedings as are not otherwise provided for. The district court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court."

[4] Section 89-2401, W. R. S. 1931, provides:

"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in

■ Where an estate is granted or devised for life with remainder over, such district courts have the power to authorize the life tenant to lease for a term of years, or to sell and convey such estate.[5]

■ Whether the power to authorize a sale and conveyance included the power to authorize the giving of a mortgage or deed of trust to secure funds with which to erect improvements for the benefit of the life tenants and remainderman, was a question which the state court had the power to decide. In Stevenson's Estate, 5 Pa. Dist. R. 5, a probate court authorized the life tenant to mortgage the property to obtain funds with which to erect improvements thereon that would benefit both the life tenant and the remainderman.

■ Likewise the right of the life tenant to reimbursement for permanent improvements already made, was a question which the state court had the power to decide. See Faison v. Kelly, 149 N. C. 282, 62 S. E. 1086.

It has been held that a court of equity, where not prohibited by the terms of the instrument creating the life estate and estate in remainder, may authorize a life tenant to make improvements required by changed conditions or essential to make the property return a reasonable income, and which are for the best interest of the remainderman and life tenant, and may direct how the cost of such improvements shall be paid.[6]

■ A party may waive his right to assert the conclusiveness or bar of a judgment under the doctrine of res judicata.[7]

---

form and effect; and such declarations shall have the force and effect of a final judgment or decree."

Section 89-2402, W. R. S. 1931, provides:

"Any person interested under a * * * will * * * may have determined any question of construction or validity arising under the instrument, * * * and obtain a declaration of rights, status or other legal relations thereunder."

Section 89-2404, W. R. S. 1931, provides:

"Any person interested as or through an * * * devisee, legatee, heir, next of kin * * * in the administration * * * of the estate of a decedent * * * may have a declaration of rights or other legal relations in respect thereto: * * *

"(c) To determine any question arising in the administration of the estate * * * including questions of construction of wills and other writings."

Section 89-2412, W. R. S. 1931, provides:

"This article is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."

[5] Section 89-3922, W. R. S. 1931, provides:

"District courts in an action by the tenant * * * for life * * * or devisee of a qualified or conditional fee * * * may authorize the sale of any estate, whether the same was created by will, deed or contract, or came by descent, when satisfied that a sale thereof would be for the benefit of the person holding the first and present estate, interest, or use, and do no substantial injury to the heirs in tail * * * or remainder."

Section 89-3924, W. R. S. 1931, provides:

"If, upon the hearing of the petition, it be made to appear to the court, by satisfactory proof, that a sale of the estate would be for the benefit of the tenant in tail or for life, and do no substantial injury to the heirs in tail * * * or remainder, the court shall direct a sale of the estate to be made, and the manner thereof, and shall appoint some suitable person or persons to make the same; and such sale shall vest the estate sold in the purchaser freed from the entailment, limitation or condition."

Section 89-3930, W. R. S. 1931, provides:

"Upon like proceedings the court may direct that such estates be leased for a term of years, renewable or otherwise, as may appear most beneficial, and upon such terms as appear just and equitable; and the rents and profits shall be paid to the person or persons who might otherwise be entitled to the use and occupancy of the estate, or the income thereof."

[6] In re Whitney, 75 Misc. 610, 136 N. Y. S. 633, 635; In re Ziegler, 82 Misc. 10, 143 N. Y. S. 682, 685; Gillespie v. Brooks, 2 Redf. Sur. (N. Y.) 349, 364; Smith & Shoptaw v. Stanton, 187 Ark. 447, 60 S.W.(2d) 183, 185; Estey v. Commerce Trust Co., 333 Mo. 977, 64 S.W. (2d) 608, 615, 616; Hooker v. Goodwin, 91 Conn. 463, 99 A. 1059, 1062, Ann. Cas. 1918D, 1159; In re Wright's Estate, 234 Pa. 580, 83 A. 427.

[7] Hickey v. Johnson (C. C. A. 8) 9 F. (2d) 498, 504; Pratt v. Wilcox Mfg. Co. (C. C. Ill.) 64 F. 589, 591; Mack v. Levy (C. C. N. Y.) 60 F. 751, 753; Hill v. City of Huron, 39 S. D. 530, 165 N. W. 534, 535; Borden v. McNamara and Graves, 20 N. D. 225, 127 N. W. 104, 108, Ann. Cas. 1912C, 841; Ætna Ins. Co. v. Dancer (Tex. Civ. App.) 181 S. W. 772, 774; In re Evans, 42 Utah, 282, 130 P. 217,

A former adjudication is a matter of defense in bar, and does not go to the jurisdiction.[8] Ordinarily it must be pleaded and proved.[9]

Here Mrs. Murrell by joining in the answer of Mrs. Mullen and requesting a redetermination and adjudication of the matters determined by the decree of distribution, and by failing to plead such decree of distribution as a bar or to raise it by motion or demurrer [see Cuff v. United States (C. C. A. 9) 64 F.(2d) 624], or to otherwise assert it as a defense, waived the bar or conclusive effect of such decree of distribution.

It follows from the foregoing that the district court of Albany County had jurisdiction of the subject-matter of No. 4634. Jurisdiction over the person of the defendants to that suit was obtained by the voluntary entry of appearance by Mrs. Murrell and Mrs. Mullen, and by the service of process on the other defendants.

We conclude that the district court of Albany County had jurisdiction to enter the decree in No. 4634.

Since this is an independent suit in a court other than that in which the decree in No. 4634 was rendered and is predicated in part on matters dehors the record and seeks relief in addition to having such decree adjudged invalid, it is a collateral attack on that decree.[10]

The state court in No. 4634, having jurisdiction of the subject-matter and of the person, had the power to decide the question presented, and its decree therein is not open to collateral attack for errors and irregularities in exercising that power.[11]

---

225; Cherry v. York (Tenn. Ch. App.) 47 S. W. 184, 188.

In Cherry v. York, supra, the court said:

"In reference to this last insistence, as well as the other point made that the circuit court judgment was binding as an adjudication as to the title of land, and cannot be reviewed, it may be further said that it appears in this case that the defendant answered on the merits, and submits the whole matter to the jurisdiction of the court, and, indeed, herself alleges a confusion, and shows a dispute as to boundaries, alleges that the complainant has taken possession of part of the disputed territory, asks that he be ejected therefrom, and asks that she have an account and decree for all damages and waste·by the complainant committed on this disputed land; thus, in substance and effect, in our opinion, waiving all questions as to the adjudication in that suit in the circuit court, and submitting the entire matters of controversy to the jurisdiction of this court, and for adjudication in this case; being practically, as we think, an abandonment of the former suit. See the case of Stothart v. Burnet, Cook, 417, which is to the effect that, although certain matters in litigation may have been tried and decided at law, if the defendant submits to the jurisdiction of the chancery court on a bill subsequently filed, and goes into the litigation, the complainant will be entitled to the full relief which his case merits."

**8** In Re Evans, 42 Utah, 282, 130 P. 217, 225, the court said:

"But the principle involved [res judicata] does not go to jurisdiction, but relates to matters in defense which, to be availing, must be pleaded or presented in defense, not to jurisdiction, but in bar."

**9** United States v. Bliss, 172 U. S. 321, 326, 19 S. Ct. 216, 43 L. Ed. 463; Graff Furnace Co. v. Scranton Coal Co. (C. C. A. 3) 266 F. 798, 801; Pierce v. Nat. Bank of Commerce (C. C. A. 8) 268 F. 487, 496; Divide Creek Irrigation District v. Hollingsworth (C. C. A. 10) 72 F.(2d) 859, 863.

**10** Folk v. Monsell (C. C. A. 10) 71 F. (2d) 816, 819; Hanna v. Allen, 153 Wash. 485, 279 P. 1098, 1100; Simonton v. Simonton, 40 Idaho, 751, 236 P. 863, 865, 42 A. L. R. 1363; Jefferson City B. & T. Co. v. Blaser, 318 Mo. 373, 300 S. W. 778, 780; Gardner v. Howard, 197 Ky. 615, 247 S. W. 933, 934; Reger v. Reger, 316 Mo. 1310, 293 S. W. 414, 421; Hester v. Hester, 103 Miss. 13, 60 So. 6, 7, Ann. Cas. 1915B, 428; Application of Whitman, 186 Wis. 434, 201 N. W. 812, 814; Miller v. Ahneman, 183 Minn. 12, 235 N. W. 622, 624, 625; Henderson v. Towle, 23 Ariz. 377, 203 P. 1085, 1087; Crosbie v. Brewer, 68 Okl. 16, 158 P. 388, 396, 173 P. 441; Clark v. Clark, 202 Ind. 104, 172 N. E. 124, 127.

**11** Johnson v. Manhattan Ry. Co., 289 U. S. 479, 496, 53 S. Ct. 721, 727, 77 L. Ed. 1331; Dowell v. Applegate, 152 U. S. 327, 337, 340, 14 S. Ct. 611, 38 L. Ed. 463; Fauntleroy v. Lum, 210 U. S. 230, 237, 28 S. Ct. 641, 52 L. Ed. 1039; Ex parte Roe, 234 U. S. 70, 72, 34 S. Ct. 722, 58 L. Ed. 1217; Marin v. Augedahl, 247 U. S. 142, 149, 152, 38 S. Ct. 452, 62 L. Ed. 1038.

In Johnson v. Railway Co., supra, the court said:

"In these circumstances it is plain that the attack was collateral. And, this being so, there was need for heeding the familiar rule that such an attack can be successful only where and to the extent that it discloses a want of power as dis-

Furthermore, the application of familiar and settled principles· of equity jurisprudence requires an affirmance of the decree below. Mrs. Connor, Mrs. Mullen and Mrs. Murrell united to obtain a decree in equity in No. 4634 to render merchantable the title to their property in order that a loan might be obtained on the security of lots 13, 14 and 15 to erect needed and permanent improvements thereon. Thereafter bonds were issued secured by a deed of trust on such lots, and innocent holders who purchased in reliance on that decree now hold $54,000 of those bonds. The proceeds of the bonds were expended by Mrs. Connor and Mrs. Mullen in good faith in making permanent improvements on such lots.

After the lapse of seven years and without offering to pay the outstanding bonds and to reimburse the life tenants for the permanent improvements so made or otherwise do equity in the premises, and while enjoying the fruits of the decree in No. 4634, Mrs. Murrell with the aid of Mrs. Mullen and the acquiescence of Mrs. Connor now seeks a decree from a court of equity that will leave the life tenants without reimbursement for improvements made in good faith and deprive the bondholders of the security for their bonds.[12] Equity aids the vigilant; and he who seeks equity must do equity and come into court with clean hands.

The decree is affirmed.

---

tinguished from error in the exertion of power that was possessed."

[12] Bright v. Boyd, 4 Fed. Cas. 127, No. 1875; Id., 4 Fed. Cas. 134, No. 1876.

In Pomeroy's Equity Jurisprudence (4th Ed.) vol. 3, § 1241, it is said:

"The right to a contribution or reimbursement from the owner, and the equitable lien on the property benefited as a security therefor, have been extended to other cases where a party innocently and in good faith, though under a mistake as to the true condition of the title, makes improvements or repairs or other expenditures which permanently increase the value of the property, so that the real owner, *when he seeks the aid of equity* to establish his right to the property itself, or to enforce some equitable claim upon it, having been substantially benefited, is required, upon principles of justice and equity, to repay the amount expended."