**Messinger Estate**

*Frank G. McKnight,* for petitioner.

WOLFE, P. J., June 22, 1970.—Before the court is the petition of the Marine National Bank, Erie, Pa., a trustee under an inter vivos trust, to purchase realty from decedent's estate. Petitioner is acting in the dual fiduciary capacity as trustee of the inter vivos trust and as executor under the last will and testament of decedent.

In his lifetime, decedent, then a widower, created the trust agreement in question under date of July 22, 1965, providing, inter alia, article 4;

"Upon the death of the settlor, the Trustee shall divide the trust into as many equal shares as the settlor shall have children then living or deceased with issue then living.

"The Trustee shall hold, manage, invest and re-invest said equal shares as separate trusts, and shall distribute the net income (hereinafter called 'income') and principal as follows . . ."

The balance of the article provides for the creation of separate trusts for the living children of the settlor and in the event of any of the children predeceasing settlor prior to his death provisions for the continuation of the individual trusts for the issue of any such deceased children per stripes.

Article 6, subsection A, of the trust agreement provides, inter alia:

"In the administration of the trusts herein created,

the Trustee shall have, in addition to and not in limitation of any authority given to it by law and without the necessity of obtaining the consent of any Court, the following powers:

"To accept in distribution of the settlor's estate and to retain investments and property which are a part of settlor's estate, *or to purchase them from the settlor's estate if funds are required to pay debts, taxes and expenses of* administration . . ." (Italics supplied.)

Article 4 of the trust agreement was amended on May 7, 1966, reciting that the settlor had since remarried and had created an antenuptial agreement with his present wife, providing for certain benefits to his said wife upon his prior death. The amended article provides, inter alia:

"Upon the death of the settlor the Trustee shall pay 2/3 of the net income of the trust, with a *minimum* payment equal to $200.00 a month, and with the power to use *principal* if necessary, to the wife of the settlor, Virginia Messinger, until her death or remarriage, whichever shall first occur, and in addition the Trustee shall allow the said wife of the settlor the *free life use* of the settlor's home until the death of the settlor's wife, Virginia Messinger, or her remarriage, whichever shall first occur. The remainder of the net income of the trustee during the life of the settlor's wife or until her remarriage, shall be paid in equal shares to the settlor's children surviving him." (Italics supplied.)

The balance of the article provides substantially as in the original agreement concerning creation of separate trusts for settlor's children or their issue in the event of their prior demise to settlor.

Again, on July 24, 1968, settlor amended article 4 of the trust revoking and rescinding the prior amendment of May 7, 1966, and in lieu thereof amends the

original trust agreement of July 22, 1965, article 4, which provides, inter alia:

"(A) Upon the death of the settlor, the Trustee shall pay 2/3 of the net income of the trust, with a *minimum* payment equal to $200.00 a month, and with the power to use all of the income, if necessary, and to use *principal*, if necessary to make said *minimum* monthly payment, to the wife of the settlor, Virginia Messinger, until her death or her remarriage, whichever shall first occur, and in addition the Trustee shall allow the wife of the settlor the *free use* of the settlor's home until the death of the settlor's wife, Virginia Messinger, or her remarriage which shall first occur." (Italics supplied.)

The balance of article 4 provides for any excess of net income from the said trust and the principal therefrom after the remarriage or demise of settlor's wife to settlor's two children, namely, Ronald Messinger and Arnold Messinger, or their heirs per stirpes.

Upon hearing of the petition of which the intestate heirs, namely, three children of testator were notified, the testimony reveals that the widow of decedent had not remarried, that the debts and deductions and inheritance taxes of decedent's estate exceed the assets by approximately $15,294.99. Decedent's home was appraised by the executor at a value of $28,000.

The scrivener of both the last will and testament and the trust agreement testified that the original trust agreement was amended to provide for settlor's present wife. It was his opinion that decedent intended to create in his wife something more than a "free life use" in settlor's home and, therefore, in the last amendment created a "free use" of the home; that settlor intended his widow should have the "free use" of the home together with $200 minimum per month to provide for her living expenses, all major expenses,

including fire insurance, taxes and those expenses germane thereto, to be provided for her from other funds of the trust.

The last will and testament was executed at the same time the last amendment to the trust was executed and was done, in the scrivener's opinion, to create a "pour over provision" under paragraph 9 of the will, which provides:

"I give, devise and bequeath all the residue of my estate of whatever nature and wherever situate, unto the Marine National Bank as Trustee under a trust agreement of which I am settlor, dated July 22, 1965, as amended by amendment dated July 24, 1968 for administration and distribution as part of the trust."

The realty in question, not being specifically devised, would be part of the residuary and by operation of paragraph 9 would now constitute part of the trust assets.

Petitioner now requests the court, in view of the insolvency of the estate in the hands of the executor, to permit the trustee to purchase the home of decedent at the appraised value of $28,000, with trust funds, from the executor so that the latter will have sufficient funds to pay the specific bequests, debts and taxes due from and on the estate. Petitioner likewise requests the court to interpret the meaning of the last four lines of article 4, paragraph A, of the amendment of the trust agreement which reads: "and in addition, the Trustee shall allow the said wife of the settlor the *free use* of the settlor's home until the death of the settlor's wife, Virginia Messinger, or her remarriage, whichever shall first occur" as to whether the said trust provisions merely establishes a traditional "life tenant" or whether this provision means that the widow may live in the home free of rent and with taxes, insurance and repairs and major repairs paid out of the trust, including corpus.

As to the first request, it is clear that the settlor had such possible exigencies in mind when establishing the trustee's powers under article 6 in that the trustee was given the specific authority to purchase property from the settlor's estate if funds are required to pay debts, taxes and expenses of administration.

Even in absence of specific authority, the executor would have the authority and, indeed, the duty to sell assets of the estate in order to pay administration expenses and taxes under the Act of April 18, 1949, P. L. 512 sec. 541, 20 PS §320.541.

Because of this "pour over provision," it appears to this court that the executor would have the duty to sell the realty to satisfy the expenses and if this can be accomplished in a manner not to defeat the intent of testator that his widow should have the "free use" of his home by the purchase of the same from assets of the trust estate, the court should permit this result, notwithstanding that there is an immediate detriment to the remaining beneficiaries of the trust estate that they would not otherwise incur if the realty were sold to a third party; ultimately, however, the remaining beneficiaries will acquire this realty upon the death or remarriage of the primary beneficiary whichever shall first occur. Or, in another sense, the secondary beneficiaries in the court's opinion, should not be granted a windfall at the expense of the creditors of the estate and the defeat of testator's intentions.

Therefore, this court concludes that the trustee is authorized to purchase the residence of testator from trust funds at the purchase price of $28,000, said purchase price to be used for the payment of the usual administration expenses, debts and transfer inheritance taxes and any balance therefrom to be held by the trustee in accordance with the trust agreement.

The second request for judicial determination is not so easily resolved.

Basically, the amendment of May 7, 1966, amending article 4, coincides with the final amendment of July 24, 1968, article 4, in all respects except that under the former amendment the settlor directed the trustee to, "allow the said wife of the settlor the *free life use* of the settlor's home until the death of the settlor's wife, or her remarriage, whichever shall first occur . . . ," and under the latter, the settlor directed the trustee to "allow the said wife of the settlor the *free use* of the settlor's home until the death of the settlor's wife or her remarriage whichever shall first occur . . ." (Italics supplied.)

In both amendments the trustee is directed to pay two-thirds of the net income with a minimum payment of $200. to the settlor's wife and if necessary to invade principal to assure this minimum payment.

From a reading of the four corners of the instrument it is obvious that testator created the traditional life estate in his wife with a remainder. The usual conventional language creating a life estate was used by testator, to-wit: "Until the death of the settlor's wife." However, in both amendments the settlor went one step further in that he not only provided a life estate in his wife but he made provisions that the life estate should be vested in her without the usual burden of expenses that generally accompany a traditional life estate: 14 P.L.Encyc., Estates in Properties, §§70 and 71.

In creating the life estate, the settlor used the word "free life use" in the first amendment and the words "free use" in the second amendment. The word "free" certainly means exactly that. If the settlor-testator desired otherwise, certainly there was nothing to prevent him from using appropriate language in directing that his widow should be chargeable with taxes, fire insurance premiums, major repairs or the pay-

ment of rent. The general rule is that a tenant for life must make all the ordinary repairs necessary to preserve the property, unless there is a provision to the contrary in the instrument creating the estate: Warfel's Estate, 22 Erie 152; McFadden's Estate, 25 Del. Co. 442; 14 P.L.Encyc. Estate in Property, §71.

Under the decisions, the cost of permanent improvements should usually be borne by the remaindermen. In Hoyt's Estate, 236 Pa. 433, at page 437, the court stated:

"Under the circumstances [permanent improvements by the life tenant] in this case it is clearly equitable that the burden of these improvements should be sustained by the remaindermen. The widow and life tenant was the principal object of the testator's bounty. To have her pay for these improvements would have left her without income at the close of her life when helpless and most in need of income. To surcharge this account [to the accountant] with said sum would be manifestly inequitable and unjust . . ."

To the same effect, see Wright's Estate, 234 Pa. 580, wherein the court authorized a trustee to spend out of the principal of the trust estate a sum sufficient to improve dilapidated and untenantable real estate so as to avoid an inevitable sale to prevent the real estate from becoming a charge upon the life tenant.

Under the Principal and Income Act of July 3, 1947, P. L. 1283, costs of improvements to property forming part of the principal are to be paid out of principal: 20 PS §3470.11. (3).

In this court's opinion, there is no restriction upon a testator or settlor to create a free life estate in his widow, that is, a traditional life estate not subject to the usual expenses to maintain it. We think this is especially so by the direction of the settlor to the trustee to invade the principal in the instant case if

necessary to assure the widow a minimum of $200 per month. This provision could conceivably and economically permit the trustee to deplete the entire trust corpus, if necessary. Surely, if the widow would have this potential right of consumption to support the life estate created in her she should not be denied the usual maintenance, expenses, tax payments and insurance premiums to maintain the free use given her from other assets of the trust.

For the foregoing reasons, the court makes the following order:

## ORDER

And now, June 22, 1970, the court authorizes the trustee, Marine National Bank of the City of Erie, Pa., to purchase the home of Earl Messinger from the executor, the Marine National Bank of Erie, Pa., for the purchase price of $28,000 from other funds of the trust corpus.

The trustee shall permit Virginia Messinger to live in testator's home without payment of rental or other charges incident to the use of the premises, and is authorized during her lifetime and until her death or remarriage, whichever shall first occur, to pay all realty taxes, fire insurance premiums and major repairs on testator's home as held in the trust from other funds of the trust corpus.

The said trustee shall determine what expenses are major and necessary for the tenantable repair as will render the home fit for habitation.

A copy of this opinion shall be made part of the executor's final and distributive account so as to give due notice thereof to the remaining beneficiaries under the trust provisions.